## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

**DARRYL MITCHELL**       *       CASE NO.
7723 Tylers Place Blvd #150       *
West Chester, OH 45069,       *
                              *
    Plaintiff,       *
                              *
vs.       *
                              *
**FUJITEC AMERICA, INC.**       *       **VERIFIED COMPLAINT (WITH**
7258 Innovation Way       *       **JURY DEMAND ENDORSED**
Mason, OH 45040,       *       **HEREON)**
                              *
    and       *
                              *
**FUJITEC CO., LTD.**       *
Big Wing, Hikone       *
Shiga, 522-8588       *
JAPAN,       *
                              *
    and       *
                              *
**GARY KRUPP**       *
10890 Windham Way       *
Alpharetta, Georgia 30022-7071,       *
                              *
    and       *
                              *
**SHAWNEZ MCKENZIE**       *
5755 Barkley Ct.       *
Fairfield, OH 45014-3901,       *
                              *
    and       *
                              *
John Doe 1-10       *
Current Names/Addresses Unknown,       *
                              *
    and       *
                              *
Jane Doe 1-10       *
Current Names/Addresses Unknown,       *
                              *
    Defendants.       *

Now comes Plaintiff, Darryl Mitchell, by and through counsel, and for his Verified Complaint against Defendants Fujitec America, Inc., Fujitec Co., Ltd., Gary Krupp, Shawnez McKenzie, John Does 1-10, and Jane Does 1-10 (all of whom are collectively referred to hereinafter as "Defendants"), hereby states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(a)(4) because Plaintiffs' claims arise under federal statutes and involve civil rights, specifically Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, as amended. To the extent there are associated claims based on state law, this Court may exercise its pendent jurisdiction to hear such claims.

2.      Venue lies in this judicial district under 28 U.S.C. § 1391(b) and S.D. Ohio Civ. R. 82.1 because:

     a. the events, acts, or omissions that give rise to the Plaintiffs' claims occurred in this district; and

     b. Defendants reside in and/or have a principal place of business in this district.

3.      Plaintiff Darryl Mitchell ("Plaintiff") is an individual who is a resident of Warren County, Ohio.

4.      Plaintiff avers, upon information and belief, that Fujitec America, Inc. ("Fujitec" or "Company") is a corporation incorporated under the laws of Delaware, and licensed to transact business in Ohio, with its principal place of business in Warren County, Ohio.

5.      Plaintiff avers, upon information and belief, that Fujitec Co., Ltd. is the parent company of Fujitec America, Inc. and is a business established in Japan, but does business in the United States of America.

2

6.      Plaintiff avers, upon information and belief, that Fujitec Co., Ltd., through its President and CEO, Takakazu Uchiyama, was present at Fujitec's corporate meetings in the United States of America, and actively engaged in the operations of Fujitec, thereby availing itself of the laws and jurisdiction of the United States of America, including this judicial district.

7.      Plaintiff avers, upon information and belief, that Fujitec Co., Ltd. and Fujitec, as parent and wholly owned subsidiary, are members of the same collective entity and constitute a single business enterprise.

8.      Plaintiff avers, upon information and belief, that Fujitec Co., Ltd. operates and exerts control over Fujitec. Plaintiff further avers that Fujitec Co., Ltd. controls the business and employment decisions of Fujitec, and that at all times relevant hereto, acted as the principal of Fujitec.

9.      Plaintiff avers, upon information and belief, that at all times relevant hereto, Fujitec acted as the agent of Fujitec Co., Ltd.

10.     Plaintiff avers, upon information and belief, that Defendant Gary Krupp ("Krupp") is an individual who is a resident of Atlanta, Georgia.

11.     Plaintiff avers, upon information and belief, that Defendant Shawnez McKenzie ("McKenzie") is an individual who is a resident of Butler County, Ohio.

12.     Plaintiff avers, upon information and belief, that Defendants Krupp, McKenzie, John Does, and Jane Does are employees, shareholders, directors, agents, servants, dual agents and/or loaned servants of Fujitec and/or Fujitec Co., Ltd. under the doctrines of respondeat superior, agency, dual agency, and other legal principles.

3

## FACTUAL BACKGROUND

13.     Plaintiff incorporates herein by reference paragraphs 1-12 of the Verified

Complaint and further avers as follows:

14.     Plaintiff is an attorney, duly licensed to practice law in the State of Ohio.

15.     On November 22, 2012, Plaintiff became employed with Fujitec as General

Counsel, and was promoted to Chief Legal Officer in 2013.

16.     At all relevant times during his employment, Plaintiff had a sterling work

reputation and personnel file.

17.     As Chief Legal Officer for Fujitec, Plaintiff served as Corporate Secretary, and

managed the HR, Legal and Safety Departments.  In this role, he had an array of responsibilities,

involving multiple departments, which included, but were not limited to: (1) oversight of new-

hire onboarding; (2) the responsibility to review and approve raises and promotions, as well as

decreases to salary and demotions; (3) review of matters related to employee discipline; and (4)

managed all Company litigation.  Plaintiff also had national responsibilities that touched every

department in the organization and fiduciary responsibility, along with personal liability, for

managing the Company's 401k plan.

18.     In 2019, Plaintiff, an African American male, became aware of similarly-situated

Caucasian employees receiving greater compensation than he was receiving.

19.     Accordingly, in an effort to correct the injustice, Plaintiff requested an increase

commensurate with his skills and with his duties and responsibilities at Fujitec.

20.     Specifically, near the end of 2019, Plaintiff approached Defendant Krupp, who

had become Chief Executive Officer of Fujitec, effective January 1, 2019, to engage in a

discussion concerning Plaintiff's compensation and the inequities relating thereto.

4

21.     In his discussion with Krupp about receiving increased compensation commensurate with his job duties, skills, and responsibilities, and consistent with that of his Caucasian counterparts, Plaintiff also presented his cost-saving and risk management efforts over the previous several years to demonstrate his value to the Company, specifically the savings Plaintiff generated for Fujitec.

22.     However, Krupp refused to have any meaningful discussion and rejected Plaintiff's request for a just compensation, despite the fact similarly-situated Caucasian employees had received salary increases, placing their compensation at a level significantly greater than that of the Plaintiff.

23.     Additionally, at this time, Plaintiff discovered that Krupp was either removing or had removed certain responsibilities from Plaintiff, had authorized certain organizational changes to the Company and approved certain pay raises, and had begun withholding from Plaintiff corporate information which Plaintiff historically had received and without which he would be unable to perform his job duties and responsibilities as Chief Legal Officer.

24.     Krupp made these changes without Plaintiff's knowledge or approval, and in violation of Company policy, all to the detriment of Plaintiff.

25.     Additionally, during each year of Plaintiff's employment, Plaintiff received a bonus of 17.5% of his annual compensation at the end of the calendar year.  However, in 2019, and following Plaintiff's request for a fair and just compensation, Plaintiff was denied the expected bonus upon which he had relied every year prior.

26.     Also, during each year of his employment, Plaintiff received a pay increase of approximately 5% of his then annual compensation, although his base compensation was not

equivalent to that of similarly-situated high-level executives of Fujitec. However, and contrary to past practices, and his expectations, he was not given a pay increase for calendar year 2020

## Fujitec's Investigation of Plaintiff

27.     Shortly after denying Plaintiff's request for a fair and just compensation, and denying Plaintiff the bonus and pay increase that Plaintiff had historically received each year prior, on January 14, 2020, Krupp asked Plaintiff to come to Krupp's office at Fujitec in Mason, Ohio and, upon his arrival, informed Plaintiff that a complaint had been filed against him by Defendant McKenzie, an employee in Fujitec's Finance department. At no point prior to the filing of said allegations was Plaintiff the recipient of employee discipline, any negative allegations, or otherwise alleged to be in violation of any workplace policies.

28.     Fujitec's Controller, Daiji Yoshimura ("Yoshimura"), was also present for the meeting with Plaintiff in Krupp's office on January 14, 2020. When Plaintiff inquired as to the nature of the complaint against him, Plaintiff was not provided any details. Krupp merely stated he "didn't want to get involved." The meeting between Plaintiff, Krupp, and Yoshimura was short and lasted approximately five minutes.

29.     Immediately after the meeting was concluded, Krupp instructed Plaintiff to go to a conference room at Fujitec's Mason, Ohio facility, where he was interviewed by outside legal counsel for Fujitec, Betsy Bulat Turner ("Turner"), an attorney based in Atlanta, Georgia.

30.     At all relevant times, Fujitec had in place a policy that was adopted and enforced by Fujitec to control the process for investigations and appeals concerning employee allegations of sexual harassment (the "Policy"). Pursuant to the Policy, Fujitec is required to thoroughly investigate allegations of sexual harassment and to "keep[] both parties informed as to the status

of the investigation." The Policy also requires Fujitec to maintain the confidentiality of an investigation involving allegations of sexual harassment.

31.     During Turner's interview of Plaintiff, which lasted approximately fifteen minutes, Plaintiff inquired into the factual basis of McKenzie's complaint, and was told by Turner that McKenzie had made allegations of sexual harassment against Plaintiff for "propositioning" her. Specifically, Turner indicated that McKenzie alleged that, more than two years ago, Plaintiff had grabbed her by the waist in the breakroom/kitchen at work. He was provided no additional details.

32.     Plaintiff denied the allegations as no such thing ever happened and, therefore, McKenzie's allegations were false and were made with malicious intent.

33.     Turner asked Plaintiff whether he had been to McKenzie's house and whether he had requested to visit her house. Plaintiff denied ever having visited McKenzie's house and indicated that the only time a discussion was had about McKenzie's home was solely in the context of renovation projects to a recently purchased home wherein, in response to McKenzie's request for referrals, Plaintiff offered to provide her contact information of the contractors he used for his rental properties.

34.     Turner also asked whether Plaintiff participated in a ten-minute phone call with McKenzie in March, 2019.

35.     Plaintiff was not provided information as to the source of the purported phone record, its authenticity, and from whose account it allegedly came; nor was he given any information about the alleged content of such call.

36.     Consequently, given the absence of any details and the substantial length of time between the alleged phone call and the January 14, 2020 interview (nearly ten months), Plaintiff

could only speculate as to whether such a call occurred, let alone what the contents of such a call may have been *if* it in fact occurred.

37.     On January 15, 2020, the very next day, Plaintiff was put on paid administrative leave by Krupp. Krupp delivered this distressful news in the form of a text message, telling Plaintiff he must immediately leave the premises.

38.     On January 16, 2020, without any prior notice, Plaintiff was denied access to the Company's computers and telecommunication system, which included his Company email. At no time was Plaintiff informed that the Company would take such measures against him while he was on paid administrative leave. This is especially significant because up until the time his access was denied, Plaintiff was still receiving and responding to, in the normal course, business matters and concerns from Company employees and third party business entities.

39.     On January 17, 2020, Plaintiff sent Krupp a text message requesting an update with respect to the status of the McKenzie matter under review. Plaintiff received no response from Krupp or anyone else affiliated with Fujitec.

40.     On January 19, 2020, Plaintiff sent a second text message asking Krupp for a status update concerning the review process; however, Krupp again failed to respond to Plaintiff's request for a status update.

41.     On January 21, 2020, Plaintiff made his third request to Krupp for a status update with respect to the review process. For the third time, Krupp ignored this reasonable request and did not provide a response.

42.     On this same day, Plaintiff learned from a co-worker that Krupp divulged to non-authorized individuals sensitive information surrounding McKenzie's allegations against Plaintiff and the inquiry relating thereto, all in direct contravention of the Company's

confidentiality policy. Specifically, Plaintiff was advised that Krupp discussed the details of the inquiry with several Fujitec employees during a social gathering where dinner and drinks were served. Plaintiff avers, upon information and belief, that other than Krupp, none of the other persons present at the dinner party had a need to know about either the allegations or the manner in which they were being handled by the Company.

43.　　On January 28, 2020, Plaintiff made a fourth request to Krupp for a status update with respect to the McKenzie allegations against Plaintiff. However, consistent with his conduct relating to the three previous requests, Krupp did not provide Plaintiff with any update on the review process.

44.　　On January 31, 2020, Plaintiff left a voicemail message for Krupp requesting for the fifth time a status update regarding the review process. Again, Krupp did not respond.

45.　　On February 3, 2020, nearly three weeks after Plaintiff's initial (and only) interactions with Fujitec about the allegations against him, Plaintiff finally received a text message from Krupp advising him to come into the Mason office on February 5, 2020 for the purpose of adding new anti-virus software to Plaintiff's laptop.

46.　　Plaintiff responded, asking whether Krupp's text meant that Plaintiff would be returning to work from his paid leave. However, and consistent with his "radio silence" while Plaintiff was on leave, Krupp did not respond to Plaintiff's question.

### Fujitec's Termination of Plaintiff

47.　　On February 5, 2020, after discovering his employee badge no longer granted him access to the Fujitec building in Mason, Ohio, Plaintiff – upon being given access by Krupp – was escorted by Krupp to a conference room, wherein Krupp told Plaintiff that "we investigated

you" and summarily stated, with no further details or explanation, that Plaintiff had violated the company's sexual harassment policy and that Plaintiff's termination was effective immediately.

48.     Despite the Policy's mandate for a thorough investigation, the process engaged in by Fujitec and Krupp was not thorough at all, given that Plaintiff was interviewed for a mere 15 minutes and the only information Plaintiff was provided concerning the allegations against him consisted of McKenzie's unfounded accusations which could not have been corroborated, because they simply were not true.

49.     Plaintiff avers, upon information and belief, that had there been a real and meaningful investigation and it had been conducted thoroughly, it would have revealed the falsity of McKenzie's allegations, as well as her malicious motives for making them.

50.     Specifically, Plaintiff avers that a truly thorough investigation would have revealed the following facts:

    a.  McKenzie was well aware of the fact that Plaintiff, in his capacity as Chief Legal Officer for Fujitec, oversaw and conducted investigations of employee allegations of workplace misconduct.

    b.  McKenzie was also well aware of the Company's anti-retaliation policy for reporters of workplace misconduct.

    c.  In late 2019, and prior to McKenzie's false allegations of misconduct by Plaintiff, Yoshimura informed Plaintiff of Fujitec's intention to terminate McKenzie, as well as another employee, Heidi Jones ("Jones"), for poor job performance. Plaintiff avers, upon information and belief, that Jones was McKenzie's best friend at Fujitec. In making the determination to terminate McKenzie and Jones, Yoshimura expressed concern that McKenzie, given her opportunistic character,

would file a lawsuit against Fujitec, and decided to defer taking action against Jones and McKenzie until January of 2020.

d.  Plaintiff avers, upon information and belief, that Jones and McKenzie both became aware of Yoshimura's intent to terminate their employment with Fujitec.

e.  As a result of this information about employment termination, in January 2020, Jones resigned before she could be terminated.

f.  Jones' resignation left McKenzie alone in the office and in fear of losing her job.

51.  Plaintiff avers that a thorough and complete investigation would have led to a finding that McKenzie asserted a false charge against Plaintiff to shield herself from otherwise legitimate employment action, i.e., termination for poor job performance. And, given her knowledge of Fujitec's anti-retaliation policy, she sought to protect her employment with the Company by falsely accusing Plaintiff.

52.  Plaintiff further avers that a thorough and complete investigation would have led to a finding that Plaintiff had a professional and purely platonic relationship with McKenzie.

53.  However, despite the Policy's requirement that Fujitec conduct a thorough investigation, the Company failed to do so.

54.  In addition, the Policy also required Fujitec to communicate the findings of the investigation to the individual investigated (i.e., Plaintiff), which Fujitec also failed to do.

55.  When Plaintiff inquired as to the factual basis underlying the outcome of the sexual harassment inquiry in the February 5, 2020 termination meeting, Krupp refused to provide any details to Plaintiff in contravention of the Policy. Instead, Krupp stated that the direction came from Japan, i.e., Fujitec's parent company, Fujitec Co., Ltd., that he not communicate with Plaintiff the status of the review into the McKenzie allegations against Plaintiff. Similarly, when

11

Plaintiff requested to see the evidence against him, Krupp rejected his request, and refused to provide Plaintiff with a copy of any written summary of findings for the same stated reason.

56.     Upon information and belief, Fujitec's parent company, i.e., Fujitec Co., Ltd., shares a unity of interest with Fujitec, and at all relevant times hereto acted as Fujitec's principal and exerted control over Fujitec's employment decisions, and in such capacity was involved in the decision to terminate Plaintiff's employment with Fujitec, and violate Plaintiff's due process rights to a fair investigation regarding the allegations against him, as acts of discrimination and retaliation.

57.     Despite Fujitec's Policy to keep Plaintiff informed and communicate the findings of the investigation relating to the McKenzie allegations, Plaintiff was not provided any additional facts related to the sexual harassment allegations.  He was not provided the names of any alleged witnesses; and he was not given any documents, or any other formal summaries or reports concerning the review process regarding McKenzie's false allegations, making any appeal of the termination decision perfunctory and the outcome preordained.

58.     Plaintiff avers that the refusal to provide Plaintiff with the information to which he was entitled was a deliberate measure taken by Fujitec and Fujitec Co., Ltd. to effectuate the termination which Fujitec had preordained at the direction and under the dominion and control of Fujitec Co., Ltd.

59.     Plaintiff was informed by Krupp that the primary reason for his termination was the alleged withholding of information from the Company concerning an incident of misconduct by Fujitec's former Chief Financial Officer, Ray Gibson ("Gibson").  The incident of misconduct relating to Gibson occurred years prior, and Plaintiff's only knowledge of it arose out of rumors he heard from other Fujitec employees a year after Gibson had been removed from the Company.

12

60.     Thus, Fujitec's primary stated reason for Plaintiff's termination had no relationship whatsoever to McKenzie's allegations against Plaintiff.

61.     Until the February 5, 2020 termination meeting with Krupp, Plaintiff had no knowledge that Fujitec was alleging that he violated work rules relating to Gibson. Moreover, at no point during the inquiry concerning McKenzie's unfounded accusations was Plaintiff interviewed regarding any issue involving Gibson.

62.     Accordingly, Plaintiff was terminated following a review process which was tainted, conducted with bias, and was not thorough and, therefore, did not constitute a true investigation as required by the Company's written polices and its usual and customary practices and procedures. Moreover, Plaintiff was never afforded the opportunity to be informed of the alleged evidence against him or to set the record straight and defend himself.

## Plaintiff's Appeal

63.     Pursuant to Fujitec's Policy, "[i]f either party directly involved in a sexual harassment investigation is dissatisfied with the outcome or resolution, that individual has the right to appeal the decision."

64.     Additionally, pursuant to the Policy, the appealing party has the right to have his/her appeal reviewed by an independent person, not previously involved in the underlying investigation.

65.     In addition to affording parties the right to appeal, the Policy also requires Fujitec to present the appealing party with "findings within 30 calendar days" after receiving the appeal.

66.     On February 18, 2020, and consistent with the Policy affording Plaintiff the right to appeal the results of the purported investigation, Plaintiff submitted an appeal on the basis that the alleged investigation of him was improperly and unfairly conducted and that Fujitec, Fujitec

Co., Ltd., and Krupp violated the Policy when they: failed to conduct a thorough investigation; refused to communicate with Plaintiff with respect to the investigation's status and ultimate findings; and breached the confidentiality provision of the Policy by disclosing sensitive details concerning the investigation of Plaintiff to other Fujitec employees who did not have a need to know and were not authorized to have access to such information.

67.     However, Fujitec neither considered Plaintiff's appeal, nor presented findings with respect thereto.

68.     Instead, on March 11, 2020, Plaintiff was advised that Fujitec and/or Fujitec Co., Ltd. "denied the appeal request" altogether.

69.     Fujitec's denial of Plaintiff's appeal came in the form of a letter, dated March 11, 2020, from Krupp, an individual who was involved in the McKenzie matter, and a letter, dated March 16, 2020, from Turner, another individual who was involved in the McKenzie matter.

70.     Thus, despite Fujitec's Policy affording its employees the right to appeal the results of an investigation and to have that appeal reviewed by an independent person, Fujitec, under the control of Fujitec Co., Ltd., chose not to permit Plaintiff's appeal to go forward at all.

71.     Given that the individuals who denied the appeal request, i.e., Krupp and Turner, are the same individuals who conducted the purported investigation of Plaintiff, the Defendants created the very conflict of interest the Policy, and specifically its requirement that an independent party review the appeal request, was designed to protect against.

72.     Accordingly, in addition to Plaintiff being denied the appropriate salary increase commensurate with the increases received by other similarly-situated employees, thereafter having his bonus taken away upon bringing the issue to his employer's attention, and thereafter being denied his annual pay increase and being wrongfully terminated and denied the appeal

rights to which Plaintiff was entitled pursuant to the Company's Policy, Plaintiffs' appeal rights under the Policy were violated.

73.     As a result of Defendants' treatment of Plaintiff before, during, and after his termination, Plaintiff has suffered significant emotional/mental distress and monetary damages.

## COUNT I
## Wrongful Termination

74.     Plaintiff incorporates herein by reference paragraphs 1-73 of the Verified Complaint and further avers as follows:

75.     There are clear public policies expressed in state and federal law which prohibit termination of an employee for reasons which include, but are not limited to:

a.  Being a member of a protected class pursuant to state and federal anti-discrimination laws;

b.  Notifying an employer of disparate treatment at the workplace when compared with similarly-situated employees;

c.  Asserting an employee's constitutional rights;

d.  Asserting an employee's rights under the company policy and/or reporting violations of the same;

e.  Reporting unlawful conduct committed by another employee and/or employer; and

f.  Reporting violations of company policy committed by another employee and/or employer.

76.     Plaintiff's termination under the circumstances and facts set forth herein jeopardize these clearly established public policies.

15

77.     Plaintiff's termination under the circumstances and facts set forth herein was motivated by conduct related to these clearly established public policies.

78.     Plaintiff was terminated in violation of state and federal laws and the public policies set forth therein, without any legitimate business justification.

79.     As a direct and proximate result of Defendants' intentional, illegal, and wrongful conduct, Plaintiff has been damaged in an amount not yet subject to accurate determination, but not less than ONE MILLION AND NO/100 DOLLARS ($1,000,000).

**COUNT II**
**<u>Defamation</u>**

80.     Plaintiff incorporates herein by reference paragraphs 1-79 of the Verified Complaint and further avers as follows:

81.     By falsely accusing Plaintiff of sexually harassing her, McKenzie published false and defamatory statements about Plaintiff without privilege to third parties and with the intent to harm Plaintiff in his character and reputation, and with fault of at least negligence, and said statements were defamatory per se.

82.     McKenzie published her false and defamatory statements about Plaintiff without privilege to third parties and with malice and hatred with the intent to harm Plaintiff in his character and reputation.

83.     Upon information and belief, by repeating McKenzie's false allegations to other Fujitec employees, Krupp published false and defamatory statements about Plaintiff without privilege to third parties and with the intent to harm Plaintiff in his character and reputation, and with fault of at least negligence, and said statements were defamatory per se.

84.     Krupp published such false and defamatory statements about Plaintiff without privilege to third parties and with malice and hatred with the intent to harm Plaintiff in his character and reputation.

85.     As a direct and proximate result of Defendants' intentional, illegal, and wrongful conduct, Plaintiff has been damaged in an amount not yet subject to accurate determination, but not less than ONE MILLION AND NO/100 DOLLARS ($1,000,000).

**COUNT III**
**Invasion of Privacy by Publication of Private Facts (Krupp)**

86.     Plaintiff incorporates herein by reference paragraphs 1-85 of the Verified Complaint and further avers as follows:

87.     Krupp publicly disclosed facts concerning the private life of Plaintiff when he disclosed to Fujitec employees who did not have a need to know and were otherwise not authorized to have access to such information regarding McKenzie's allegations against Plaintiff, as well as information related to the purported investigation concerning the same.

88.     The matters disclosed by Krupp are highly offensive and objectionable to a reasonable person of ordinary sensibilities.

89.     Krupp's disclosure was intentional and the matter publicized was not of legitimate concern to the public or any of the individuals to whom Krupp made the disclosure.

90.     Krupp's intentional and improper disclosure of otherwise confidential information caused serious damage to the reputation of Plaintiff who was an otherwise innocent employee with a stellar employment record.

91.     As a direct and proximate result of Krupp's intentional, illegal, and wrongful conduct, Plaintiff has been damaged in an amount not yet subject to accurate determination, but not less than ONE MILLION AND NO/100 DOLLARS ($1,000,000).

## COUNT IV
### False Light Invasion of Privacy (Krupp)

92.    Plaintiff incorporates herein by reference paragraphs 1-91 of the Verified Complaint and further avers as follows:

93.    Krupp's disclosure of facts concerning the private life of Plaintiff, i.e., the purported investigation of Plaintiff and any facts related thereto, gave publicity to a matter concerning Plaintiff that placed Plaintiff in a false light.

94.    Krupp's detail of the allegations against Plaintiff were highly offensive to a reasonable person because McKenzie's allegations against Plaintiff were false and concerned a highly offensive subject, i.e., sexual harassment.

95.    In disclosing the circumstances surrounding McKenzie's allegations against Plaintiff and Fujitec's purported investigation of Plaintiff, Krupp had knowledge of and/or acted in reckless disregard as to the falsity of the matter and the false light in which Plaintiff would be placed.

96.    As a direct and proximate result of Krupp's intentional, illegal, and wrongful conduct, Plaintiff has been damaged in an amount not yet subject to accurate determination, but not less than ONE MILLION AND NO/100 DOLLARS ($1,000,000).

## COUNT V
### Breach of Implied Contract

97.    Plaintiff incorporates herein by reference, as if fully rewritten, paragraphs 1-96, and further avers as follows:

98.    Implied terms of employment existed as between Plaintiff and Fujitec by way of Fujitec's employee handbooks, company policies, and/or oral representations by persons authorized to bind the Company in the employment relationship with Plaintiff.

18

99.     Defendants' aforementioned actions, including, but not limited to, conducting a biased and incomplete investigation, failing to communicate the status and findings of the purported investigation, failing to allow Plaintiff to defend himself in the purported investigation based upon false allegations, denying Plaintiff his appeal rights in violation of the Company's Policy, and ultimately terminating Plaintiff in the manner set forth herein constitutes a breach of an implied contract.

100.    Additionally, Defendants' refusal to compensate Plaintiff with his annual 17.5% bonus and provide his annual pay increase in the manner set forth herein constitutes a breach of an implied contract.

101.    As a direct and proximate result of Defendants' intentional, illegal, and wrongful conduct, Plaintiff has been damaged in an amount not yet subject to accurate determination, but not less than ONE MILLION AND NO/100 DOLLARS ($1,000,000).

### COUNT VI
### Good Faith and Fair Dealing

102.    Plaintiff incorporates herein by reference, as if fully rewritten, paragraphs 1-101, and further avers as follows:

103.    Defendants had a duty to exercise good faith and fair dealing in their employment relationship with Plaintiff.

104.    Defendants' aforementioned actions, including, but not limited to, conducting a biased and incomplete investigation, failing to communicate the status and findings of the purported investigation, failing to allow Plaintiff to defend himself in the purported investigation based upon false allegations, denying Plaintiff his appeal rights in violation of the Company's Policy, and ultimately terminating Plaintiff in the manner set forth herein constitutes a breach of Defendants' covenant of good faith and fair dealing.

105.    Additionally, Defendants' refusal to compensate Plaintiff with his annual 17.5% bonus and provide his annual pay increase in the manner set forth herein constitutes a breach of Defendants' covenant of good faith and fair dealing.

106.    As a direct and proximate result of Defendants' intentional, illegal, and wrongful conduct, Plaintiff has been damaged in an amount not yet subject to accurate determination, but not less than ONE MILLION AND NO/100 DOLLARS ($1,000,000).

## COUNT VII
## Promissory Estoppel

107.    Plaintiff incorporates herein by reference, as if fully rewritten, paragraphs 1-106, and further avers as follows:

108.    Defendants made certain representations to Plaintiff by way of employee handbooks, Company policies, and/or oral representations including, but not limited to, the following:

a. Defendants' investigation of Plaintiff would be unbiased and thorough;

b. Defendants would communicate the status and findings of the investigation to Plaintiff;

c. Plaintiff would have the opportunity to defend himself in an investigation against him, including the right to appeal the findings of the investigation;

d. The investigation of Plaintiff and related facts would be kept confidential;

e. Plaintiff would receive an annual bonus of 17.5%; and

f. Plaintiff would receive his usual and customary annual pay increase of approximately 5% of his then base pay.

109.    Defendants had a reasonable expectation that such representations would be relied upon by Plaintiff and others to whom such representations were made.

110. Plaintiff justifiably replied upon Defendants' representations, and did so to his detriment.

111. As a direct and proximate result of Defendants' intentional, illegal, and wrongful conduct set forth herein, Plaintiff has been damaged in an amount not yet subject to accurate determination, but not less than ONE MILLION AND NO/100 DOLLARS ($1,000,000).

## COUNT VIII
## Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, as amended

112. Plaintiff incorporates herein by reference, as if fully rewritten, paragraphs 1-111, and further avers as follows:

113. Fujitec is an employer of more than 200 employees.

114. Fujitec Co., Ltd. is an employer of more than 10,000 employees.

115. Plaintiff is an African-American male.

116. Plaintiff was subject to disparate treatment by Defendants based on his race.

117. Defendants' aforementioned actions, including but not limited to, refusing to consider Plaintiff's request for an increase in salary despite granting similarly-situated Caucasian employees such an increase; removing responsibilities from Plaintiff and withholding information to which Plaintiff historically had received and was required to receive in order to perform his job; making false allegations of harassment; conducting a biased and incomplete investigation of Plaintiff arising out of false allegations by McKenzie; failing to communicate the status and findings of the investigation; failing to allow Plaintiff to defend himself in an investigation based upon false allegations; denying Plaintiff his appeal rights in violation of the Company's Policy; ultimately terminating Plaintiff in the manner set forth herein; and treating Plaintiff differently than similarly-situated Caucasian employees, were taken because of

Plaintiff's race and, thus, constitute unlawful discriminatory practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, as amended.

118.    Moreover, Plaintiff avers that Defendants denied Plaintiff his procedural and substantive due process rights to an investigation and appeal as an intentional act of discrimination and retaliation against Plaintiff.

    a.  Pursuant to Fujitec's handbooks and Company policies in effect at all times relevant hereto, Plaintiff was entitled to certain due process rights, including but not limited to: an unbiased, thorough investigation; the right to be informed as to the status of the investigation, as well as the ultimate findings of the investigation; the right to confidentiality with respect to the investigation; the right to appeal the investigation; and the right to an independent third party (i.e., someone "who did not make the initial determination") to consider the appeal of the findings of the investigation.

    b.  Plaintiff's procedural due process rights were violated when he was terminated without full and complete notice and a reasonable opportunity to defend himself as set forth previously herein.

    c.  Plaintiff's substantive due process rights were violated when Plaintiff was terminated without being afforded an investigation of the allegations against him as required by the Company's Policy.

    d.  Plaintiff's substantive due process rights were further violated when Plaintiff sought redress for this violation of his due process rights by submitting an appeal, and Defendants refused to consider his appeal request altogether in violation of the Company's Policy.

e.  Plaintiff avers, upon information and belief, that such due process rights were not denied to similarly-situated non-African American employees.

119.  As a direct and proximate result of Defendants' intentional, illegal, and wrongful conduct, Plaintiff has been damaged in an amount not yet subject to accurate determination, but not less than ONE MILLION AND NO/100 DOLLARS ($1,000,000).

## COUNT IX
### Retaliation (Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, as amended)

120.  Plaintiff incorporates herein by reference, as if fully rewritten, paragraphs 1-119, and further avers as follows:

121.  Defendants' aforementioned actions, including but not limited to, denying Plaintiff his annual bonus and annual pay increase, launching a biased and incomplete investigation of Plaintiff upon false accusations, intentionally denying Plaintiff his due process rights, and ultimately terminating Plaintiff, after Plaintiff raised reasonable concerns of disparate treatment in comparison to similarly-situated employees with respect to compensation, constitute retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, as amended.

122.  As a direct and proximate result of Defendants' intentional, illegal, and wrongful conduct, Plaintiff has been damaged in an amount not yet subject to accurate determination, but not less than ONE MILLION AND NO/100 DOLLARS ($1,000,000).

## COUNT X
### Discrimination

123.  Plaintiff incorporates herein by reference, as if fully rewritten, paragraphs 1-122, and further avers as follows:

124.  Plaintiff is an African-American male.

125.    At all relevant times, Plaintiff was an "employee" pursuant to Ohio Rev. Code §

4112.01(A)(3) and Defendants were "person[s]" and "employer[s]" pursuant to Ohio Rev. Code

§ 4112.01(A)(1) and (2).

126.    Defendants' aforementioned actions, including but not limited to, refusing to

consider Plaintiff's request for an increase in salary despite granting similarly-situated Caucasian

employees such an increase; denying Plaintiff his annual bonus; denying Plaintiff his usual and

customary annual pay increase; removing responsibilities from Plaintiff and withholding

information to which Plaintiff historically had received and was required to receive in order to

perform his job; making false allegations of harassment; conducting a biased and incomplete

investigation of Plaintiff arising out of false allegations by McKenzie; failing to communicate

the status and findings of the investigation; failing to allow Plaintiff to defend himself in an

investigation based upon false allegations; denying Plaintiff his appeal rights in violation of the

Company's Policy; ultimately terminating Plaintiff in the manner set forth herein; and treating

Plaintiff differently than similarly-situated Caucasian employees, were taken because of

Plaintiff's race and thus constitute unlawful discriminatory practices in violation of Ohio law,

specifically Rev. Code § 4112.02(A) and (J), Rev. Code § 4112.99.

127.    As a direct and proximate result of Defendants' intentional, illegal, and wrongful

conduct, Plaintiff has been damaged in an amount not yet subject to accurate determination, but

not less than ONE MILLION AND NO/100 DOLLARS ($1,000,000).

## COUNT XI
### Retaliation

128.    Plaintiff incorporates herein by reference, as if fully rewritten, paragraphs 1-127,

and further avers as follows:

129.    Defendants' aforementioned actions, including but not limited to, denying Plaintiff his annual bonus, denying Plaintiff his usual and customary annual pay increase, launching a biased and incomplete investigation of Plaintiff upon false accusations, and ultimately terminating him, after Plaintiff raised reasonable concerns of disparate treatment in comparison to similarly-situated employees with respect to compensation, constitute retaliation in violation of state and federal laws.

130.    As a direct and proximate result of Defendants' intentional, illegal, and wrongful conduct, Plaintiff has been damaged in an amount not yet subject to accurate determination, but not less than ONE MILLION AND NO/100 DOLLARS ($1,000,000).

## COUNT XII
### Intentional Infliction of Emotional Distress

131.    Plaintiff incorporates herein by reference, as if fully rewritten, paragraphs 1-130, and further avers as follows:

132.    At all relevant times, as described herein, Defendants acted with the express intent of causing serious emotional distress to Plaintiff, or knew or should have known that their conduct would result in serious emotional distress to Plaintiff.

133.    Defendants' conduct was outrageous and extreme and beyond all possible bounds of decency and considered utterly intolerable in a civilized community.

134.    Defendants' conduct caused Plaintiff serious emotional distress that was of such a nature that no reasonable person could or should endure.

135.    As a direct and proximate result of Defendants' intentional, illegal, and wrongful conduct, Plaintiff has been damaged in an amount not yet subject to accurate determination, but not less than ONE MILLION AND NO/100 DOLLARS ($1,000,000).

**WHEREFORE,** Plaintiff prays for judgment in his favor and against Defendants and requests that this Court enter judgment as follows:

1.    On Count One, award compensatory damages, jointly and severally, in an amount not yet subject to accurate determination but believed to be in excess of ONE MILLION AND NO/100 DOLLARS ($1,000,000);

2.    On Count Two, award compensatory damages, jointly and severally, in an amount not yet subject to accurate determination but believed to be in excess of ONE MILLION AND NO/100 DOLLARS ($1,000,000);

3.    On Count Three, award compensatory damages, jointly and severally, in an amount not yet subject to accurate determination but believed to be in excess of ONE MILLION AND NO/100 DOLLARS ($1,000,000);

4.    On Count Four, award compensatory damages, jointly and severally, in an amount not yet subject to accurate determination but believed to be in excess of ONE MILLION AND NO/100 DOLLARS ($1,000,000);

5.    On Count Five, award compensatory damages, jointly and severally, in an amount not yet subject to accurate determination but believed to be in excess of ONE MILLION AND NO/100 DOLLARS ($1,000,000);

6.    On Count Six, award compensatory damages, jointly and severally, in an amount not yet subject to accurate determination but believed to be in excess of ONE MILLION AND NO/100 DOLLARS ($1,000,000);

7.    On Count Seven, award compensatory damages, jointly and severally, in an amount not yet subject to accurate determination but believed to be in excess of ONE MILLION AND NO/100 DOLLARS ($1,000,000);

8. On Count Eight, award compensatory damages, jointly and severally, in an amount not yet subject to accurate determination but believed to be in excess of ONE MILLION AND NO/100 DOLLARS ($1,000,000);

9. On Count Nine, award compensatory damages, jointly and severally, in an amount not yet subject to accurate determination but believed to be in excess of ONE MILLION AND NO/100 DOLLARS ($1,000,000);

10. On Count Ten, award compensatory damages, jointly and severally, in an amount not yet subject to accurate determination but believed to be in excess of ONE MILLION AND NO/100 DOLLARS ($1,000,000);

11. On Count Eleven, award compensatory damages, jointly and severally, in an amount not yet subject to accurate determination but believed to be in excess of ONE MILLION AND NO/100 DOLLARS ($1,000,000);

12. On Count Twelve, award compensatory damages, jointly and severally, in an amount not yet subject to accurate determination but believed to be in excess of ONE MILLION AND NO/100 DOLLARS ($1,000,000);

13. With respect to Counts One through Twelve, inclusive, award punitive damages in an amount no less than TEN MILLION AND NO/100 DOLLARS ($10,000,000);

14. Reasonable attorney's fees and the costs/expenses of litigation;

15. Prejudgment and post judgment interest; and

16.     Such other and further relief as the Court may find appropriate and allowed by

law.

                              Respectfully submitted,

                              Jonathan Hollingsworth (0022976)
                              HOLLINGSWORTH & WASHINGTON, LLC
                              6494 Centerville Business Parkway
                              Centerville, Ohio 45459
                              (937) 424-8556 (telephone)
                              (937) 424-8557 (fax)
                              E-mail address: jhollingsworth@jhallc.com

                              Attorney for Plaintiff Darryl Mitchell


                          **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues joined herein.

                              Jonathan Hollingsworth

## VERIFICATION

The undersigned hereby certifies that the foregoing allegations set forth in the Verified Complaint are true and accurate.

DARRYL MITCHELL