## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**DARRYL MITCHELL,**

      **Plaintiff,**

      **v.**                    **Case No. 1:20–cv–363**
                                    **JUDGE DOUGLAS R. COLE**

**FUJITEC AMERICA, INC., et al.,**

      **Defendants.**

### OPINION AND ORDER

This case raises difficult questions regarding the scope of liability for intra-corporate statements made in connection with reporting alleged workplace misconduct. Defendant Fujitec America, Inc. terminated Plaintiff Darryl Mitchell ("Mitchell") after Co-Defendant Shawnez McKenzie ("McKenzie") made sexual harassment allegations against Mitchell to Fujitec's human resources department. Mitchell responded with this lawsuit, in which he asserts various claims, ranging from Ohio-law defamation and false light claims to Title VII race discrimination claims, against a handful of defendants. This action is now before the Court on two motions: (1) McKenzie's Motion to Dismiss (Doc. 10, hereinafter McKenzie's Motion or McKenzie's Mot.); and (2) Defendants Fujitec America, Inc., Fujitec Co., Ltd., and Fujitec America's Chief Executive Officer Gary Krupp's (collectively the "Fujitec Defendants") Motion to Partially Dismiss (Doc. 11, hereinafter Fujitec Motion or Fujitec Mot.). For the reasons explained below, the Court **GRANTS-IN-PART** and

**DENIES-IN-PART** McKenzie's Motion, and **GRANTS-IN-PART** and **DENIES-IN-PART** the Fujitec Motion.

## BACKGROUND

Mitchell began working as in-house counsel for Fujitec America in 2012.[1] (Compl., Doc. 1, #4, ¶ 15). In 2013, Fujitec promoted him to Chief Legal Officer, the position he maintained until Fujitec terminated his employment in early 2020. (*Id.* at #10, ¶ 47). That parting of ways gave rise to this lawsuit.

According to Mitchell, near the end of 2019, he approached Gary Krupp, Fujitec America's Chief Executive Officer, to inquire about what Mitchell believed were pay inequities relating to Mitchell's compensation. (*Id.* at #4, ¶ 20). In particular, Mitchell, an African American, alleges that he complained to Krupp about making less that "similarly-situated Caucasian employees." (*Id.* at #4, ¶ 18). Krupp declined to discuss the issue, and rejected Mitchell's request for increased compensation. (*Id.* at #5, ¶ 22). Mitchell further claims that, at about this same time, Krupp began stripping job responsibilities from Mitchell and interfering with Mitchell's access to information that Mitchell contends was important to his professional duties. (*Id.* at #5, ¶ 23).

A few weeks after Krupp denied Mitchell's request for additional compensation, Krupp came to Mitchell's office to inform him that another Fujitec employee, McKenzie, had filed a complaint against Mitchell with human resources.

---

[1] As this case is before the Court on motions to dismiss, the Court takes accepts the facts in Plaintiff's Complaint as true for purposes of the instant motions. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002) (citing *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit,* 507 U.S. 163, 164 (1993)).

(*Id*. at #6, ¶ 27). Krupp, along with Fujitec's Controller, Daiji Yoshimura, who was also present for the meeting, declined to provide any specifics about McKenzie's allegations. But, immediately after the meeting, Krupp asked Mitchell to report to a conference room where outside counsel, retained to investigate the complaint, interviewed him. (*Id*. at #4, ¶ 29).

During the interview, Mitchell learned that McKenzie had alleged that Mitchell sexually harassed her. Specifically, McKenzie claimed that Mitchell had "propositioned" her. (*Id*. at #7, ¶ 31). Further, McKenzie stated that Mitchell had allegedly grabbed her by the waist in the office breakroom. (*Id*.). Questions posed to Mitchell by outside counsel further suggested that McKenzie had asserted to human resources that Mitchell visited her at her home, and had engaged in a ten-minute telephone call that included inappropriate conversation. (*Id*. at #7, ¶¶ 33, 34).

The next day, Fujitec placed Mitchell on administrative leave and denied Mitchell access to the company's "computers and telecommunications system." (*Id*. at #8, ¶¶ 37, 38). Mitchell further claims that, contrary to Fujitec's policy for workplace investigations, the company refused to provide status updates throughout the review process. (*See id*. at #8–9, ¶¶ 39–41, 43).

On January 21, 2020, Mitchell learned from a co-worker that Krupp had divulged details surrounding McKenzie's allegations to other "non-authorized" employees. (*Id*. at #9, ¶ 42). This discussion allegedly occurred during a social gathering for dinner and drinks with other Fujitec employees. (*Id*.). Mitchell believes

none of the employees present had a "need to know" about McKenzie's complaint or the ensuing investigation. (*Id.*).

On February 3, 2020, Krupp asked Mitchell to bring his Fujitec laptop to work on February 5, 2020 so that the company could install "new anti-virus software." (*Id.* at #9, ¶ 45). When Mitchell showed up that day, he discovered that his badge no longer provided him access to the company building. (*Id.* at #9–10, ¶ 47). Krupp met Mitchell and escorted him to a conference room. Once there, Krupp told Mitchell that the company determined Mitchell had violated Fujitec's sexual harassment policy, and that Mitchell was terminated immediately. (*Id.*). Mitchell claims that, in doing so, Krupp refused to provide any details regarding that determination, once again contrary to Fujitec policy. (*Id.* at #10, ¶ 48).

According to Mitchell, McKenzie fabricated her sexual harassment allegations. (*Id.*). Mitchell further claims that she did so because Mitchell, in his capacity as Chief Legal Officer, had investigated McKenzie and one of her colleagues for alleged workplace misconduct. (*Id.* at #10, ¶ 50). Given that incident, McKenzie brought allegations against Mitchell "to shield herself from otherwise legitimate employment action, i.e., termination for poor job performance." (*Id.* at #11, ¶ 51). Mitchell believes that any "thorough and complete investigation" would have revealed the falsity of the charges against him, (*id.* at #11, ¶ 52), but that the company failed to conduct one because of its preordained decision to terminate him, (*see id.* at #12, ¶ 57).

All of that being said, it is not entirely clear that Mitchell is asserting that his alleged violation of the sexual harassment policy was even the basis for his

termination. That is so because Mitchell separately alleges that Krupp informed Mitchell that the primary reason for his termination was that Mitchell had withheld information regarding wrongdoing by Fujitec's former Chief Financial Officer, Ray Gibson. (*Id*. at #12, ¶ 59). And Mitchell alleges that Krupp relied on that reason despite the Gibson incident having occurred "years prior" to Mitchell's termination and that Mitchell's knowledge about Gibson's misconduct only "arose out of rumors." (*Id*.).

In any event, Mitchell appealed his termination pursuant to Fujitec's written workplace policies. (*Id*. at #13, ¶ 66). Mitchell contends that Fujitec failed to abide by the procedures set forth in those policies. (*See generally id*. at #13–15 , ¶¶ 63–73). Nonetheless, on March 11, 2020, Fujitec informed Mitchell that it was denying his appeal. (*Id*. at #14, ¶ 68). As a result of his allegedly wrongful termination, Mitchell purportedly suffered "significant emotional/mental distress and monetary damages." (*Id*. at #15, ¶ 73).

 Based on these facts, Mitchell filed a twelve-count complaint against McKenzie, Krupp, Fujitec America, Inc., and Fujitec Co., Ltd. (the Japanese parent corporation). He asserts Ohio-law claims for (1) wrongful termination in violation of public policy (called a *Greeley* claim); (2) defamation; (3) invasion of privacy (Krupp only); (4) false light (Krupp only); (5) breach of implied contract; (6) breach of good faith and fair dealing; (7) promissory estoppel; and (8) intentional infliction of emotional distress. He also asserts claims for discrimination and retaliation under both Title VII (two counts) and corresponding state law (two counts). Beyond

specifying that the invasion of privacy and false light claims are directed against Krupp only, he does not otherwise specifically identify the Defendant(s) against whom any particular claim is asserted.

## PENDING MOTIONS

In response to the Complaint, both McKenzie and the Fujitec Defendants have filed motions to dismiss under Rule 12(b)(6).

### A.     McKenzie's Motion To Dismiss.

In McKenzie's Motion, she seeks to dismiss all claims other than the two which Mitchell directed only to Krupp. She argues that Mitchell has failed to state a plausible claim for defamation against her for three reasons. First, she says Mitchell has failed to identify the allegedly defamatory statements with adequate specificity. Second, she claims that the alleged statements are subject to a qualified privilege, and Mitchell's allegations fail to overcome that privilege. And, third, she claims that there is no evidence that her reports of sexual harassment caused Mitchell harm, as Mitchell acknowledges Fujitec's asserted primary reason for terminating him was his failure to disclose Gibson's wrongdoing. In addition, McKenzie notes the chilling effect that could arise with regard to reporting of sexual harassment, should those who report such allegations face potential liability for defamation.

As for the intentional infliction of emotional distress claim, McKenzie argues it fails for two reasons. First, where an intentional infliction claim is based on allegedly defamatory conduct, that claim necessarily fails if the underlying defamation claim fails. Second, she contends that Ohio law holds that reporting

sexual harassment, even if the report is false, does not constitute "extreme or outrageous conduct."

Finally, as to the remaining claims, she asserts that, as she was not Mitchell's employer, she cannot be liable for wrongful termination, breach of implied contract, breach of covenant of good faith and fair dealing, promissory estoppel, or any of the Title VII or corresponding state-law discrimination or retaliation claims. Accordingly, "to the extent that Mitchell is asserting any of all of these claims" against her, she requests dismissal with prejudice. (As noted above, Mitchell directs the remaining two claims in the Complaint, invasion of privacy and false light, only against Krupp.)

## B.    The Fujitec Defendants' Motion To Partially Dismiss

The Fujitec Defendants filed their Motion to Dismiss on the same day as McKenzie. Unlike McKenzie's Motion, though, the Fujitec Defendants' Motion did not seek to dismiss all claims asserted against those Defendants. Rather, they seek an order "dismissing the majority of Plaintiff's claims." (Fujitec Mot., Doc. 11, #69). In particular, the Fujitec Defendants do not seek dismissal of the Title VII retaliation against the two corporate-entity defendants, or the corresponding state-law discrimination-based retaliation claim against any defendant. They argue that all other claims fail as a matter of law, though, for the reasons summarized below.

The wrongful termination claim under Ohio law, called a *Greeley* claim, fails, they say, because Mitchell cannot meet the "jeopardy element." In particular, because Ohio already has a statutory scheme to protect against discrimination, i.e., O.R.C.

7

§ 4112, a judicially-created action for wrongful discharge is not necessary, and thus, under *Greeley* and its progeny, is improper.

Next, the Fujitec Defendants argue the defamation claim fails for two reasons. First, they contend that Mitchell's allegations fail to plausibly state a claim against Krupp because Krupp made those statements to other corporate employees, rendering his comments subject to a qualified privilege. Second, they say, there are no allegations that the corporate-entity defendants said anything at all, which means they cannot be liable for defamation.

As for the invasion of privacy claim against Krupp, the Fujitec Defendants argue that the statements at issue relate to Mitchell's actions *at work*, and Mitchell cannot show he had a reasonable expectation of privacy for his conduct in a public workplace. They challenge the false light claim, on the other hand, on multiple grounds. First, they say, it is based on the allegedly defamatory statements, and thus fails for the same reason as the defamation claim. But beyond that, false light requires "publicity"—communication to the public at large—and there are no allegations that such communication occurred here.

The breach of implied contract claim likewise fails, they say, because there is no contract—implied or otherwise. In particular, Mitchell appears to base this claim on various company policies relating to harassment investigations. But the Fujitec Defendants assert that employee handbooks and policies are not contracts under Ohio law.

8

Continuing on, the Fujitec Defendants argue that the duty of good faith and fair dealing does not create a freestanding claim under Ohio law. As for promissory estoppel, they say that Mitchell has failed to identify any adequate promise—again relying on the notion that statements in an employee handbook don't cut it as a basis for imposing liability.

Turning to the Title VII (Count VIII) discrimination claim and Mitchell's corresponding state-law (Count X) discrimination claim, the Fujitec Defendants argue that Mitchell needed, but failed, to identify similarly situated white employees who allegedly received more favorable treatment. And the Defendants seek dismissal of the Title VII discrimination (Count VIII) and retaliation (Count IX) claims *against Krupp*, on the grounds that Title VII does not give rise to individual liability.

Finally, as to the intentional infliction of emotional distress claim, the Fujitec Defendants, like McKenzie, argue that Mitchell has failed to identify any extreme and outrageous conduct.

## LEGAL STANDARD

At the motion to dismiss stage, a complaint must "state[] a claim for relief that is plausible, when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). "To survive a motion to dismiss, in other words, [Mitchell] must make sufficient factual allegations that, taken as true, raise the likelihood of a legal claim that is more than possible, but indeed plausible." *Id.* (citations omitted).

In making that assessment, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal quotation omitted). That is true, however, only as to factual allegations. The Court need not accept as true Plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, the well-pled facts must be sufficient to "raise a right to relief above the speculative level," such that the asserted claim is "plausible on its face." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 546–47. Under the *Twombly/Iqbal* plausibility standard, courts play an important gatekeeper role, ensuring that claims meet a plausibility threshold before defendants are subjected to the potential rigors (and costs) of the discovery process. "Discovery, after all, is not designed as a method by which a plaintiff discovers whether he has a claim, but rather a process for discovering evidence to substantiate plausibly-stated claims." *Green v. Mason*, No. 1:19-cv-14, 2020 WL 7028466, at *7 (S.D. Ohio Nov. 30, 2020).

## LAW AND ANALYSIS

The Defendants' two motions to dismiss overlap, at least regarding those claims that are addressed by both motions. Accordingly, in the interests of efficiency, the Court proceeds on a claim-by-claim basis, discussing the arguments in each of the two motions to the extent that a given motion addresses that claim.

**A.    Mitchell Fails To Plausibly Allege A Claim For Termination In Violation Of Public Policy (Count I).**

Employment in Ohio, including employment with state or local government bodies, is generally governed by the employment at-will doctrine. *Wiles v. Medina Auto Parts*, 773 N.E.2d 526, 529 (Ohio 2002). Accordingly, an employer generally may terminate an at-will employee for any reason at any time, and that terminated employee may not sue the employer for wrongful discharge. *Id.* But there are exceptions to this doctrine. One such exception, relevant here, allows a terminated employee to bring a wrongful discharge claim when the discharge violates public policy, which Ohio courts commonly refer to as a *Greeley* claim. *Miracle v. Ohio Dep't of Veterans Servs.*, 137 N.E.3d 1110, 1113 (Ohio 2019) (citing *Greeley v. Miami Valley Maint. Contractors, Inc.*, 551 N.E.2d 981 (Ohio 1990)).

Making a claim for wrongful discharge in violation of public policy—a *Greeley* claim—requires that a plaintiff establish each of four elements: (1) that a *clear* public policy existed and was manifested either in a state or federal constitution, statute, or administrative regulation, or in the common law (the "clarity element"); (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize that public policy (the "jeopardy element"); (3) that the plaintiff's dismissal was motivated by conduct related to the public policy (the "causation element"); and (4) that the employer lacked an overriding legitimate business justification for the dismissal (the "overriding-justification element"). *Miracle*, 137 N.E.3d at 1113 (citing *Collins v. Rizkana*, 652 N.E.2d 653, 657–58 (Ohio 1995)). The first two elements—clarity and jeopardy—are questions of law for a court

11

to decide. *Collins*, 652 N.E.2d at 658. Whereas, as a general matter, the last two elements—causation and overriding-justification—involve factual issues for a factfinder to decide. *Id.*

Here, the Fujitec Defendants[2] challenge Mitchell's ability to establish the jeopardy requirement. (Fujitec Mot., Doc. 11, #76). The jeopardy element asks whether "dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy." *Miracle*, 137 N.E.3d at 1113. In conducting that inquiry, the Court must:

> (1) determine what kind of conduct is necessary to further the public policy at issue; (2) decide whether the employee's actual conduct fell within the scope of conduct protected by this policy; and (3) consider whether employees would be discouraged from engaging in similar future conduct by the threat of dismissal.

*Allman v. Walmart, Inc.*, 967 F.3d 566, 574 (6th Cir. 2020) (citing *Himmel v. Ford Motor Co.*, 342 F.3d 593, 599 (2003)). Of particular importance here, the jeopardy analysis also involves inquiring "into the existence of any alternative means of promoting the particular public policy to be vindicated by a common-law wrongful discharge claim." *Shingler v. Provider Servs. Holdings, L.L.C.*, No. 106383, 2018 WL 3414268, ¶ 22 (Ohio Ct. App. July 12, 2018). The Ohio Supreme Court in *Wiles*, 773 N.E.2d at 531, explained it like this:

---

[2] For her part, McKenzie notes that she is not Mitchell's employer, and thus he cannot bring a wrongful termination claim against her. (McKenzie Mot., Doc. 10, #66). Although she does not cite any Ohio case law to that effect, liability for the tort is predicated on the act of dismissing an employee. And, as McKenzie observes, she did not have the power to dismiss Mitchell. In his opposition, Mitchell does not respond on the wrongful termination claim as to McKenzie. The Court thus agrees with McKenzie that Mitchell cannot maintain a wrongful termination action against her. Accordingly, the Court **DISMISSES** the claim **WITH PREJUDICE** as to her.

> If the statute that establishes the public policy contains its own remedies, it is less likely that tort liability is necessary to prevent dismissals from interfering with realizing the statutory policy. Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests.

That is, as a general matter, a plaintiff cannot use a statute or regulation as the basis for a *Greeley* claim, if the statute or regulation at issue contains its own penalty provisions. *See Jakischa v. Cent. Parcel Express*, 106 F. App'x 436, 440 (6th Cir. 2004) (finding that the Ohio Revised Code provided "adequate statutory remedy" to preclude a *Greeley* claim for wrongful discharge under the jeopardy prong).

This limitation presents a problem for Mitchell. Most of the public policies that Mitchell cites appear to be related to race discrimination or retaliation for reporting race discrimination. Ohio law—in particular O.R.C. § 4112—already provides a "full panoply of remedies, including compensatory and punitive damages," *see Wakefield v. Children's Hospital*, No. C2-06-1034, 2008 WL 3833798, at *8 (S.D. Ohio Aug. 13, 2008), that "adequately protects society's interests," *Wiles*, 773 N.E. 2d at 531, on these issues. Thus, as in *Wiles*, "there is no need to recognize a common-law action for wrongful discharge." *Id*.

Separately, to the extent that the "public policies" to which Mitchell alludes are related to Fujitec's alleged failure to follow its own company policies, the claim fails for a different reason. As the Sixth Circuit has noted, the clarity element requires Mitchell to identify a *clear* public policy existed and was manifested in a statute, rule, or the common law. *See Jakischa*, 106 F. App'x at 440 ("Since *Greeley* was decided, the Ohio Supreme Court has held that the 'clear public policy' sufficient

to justify a wrongful-discharge claim 'may also be discerned as a matter of law based on other sources, such as the Constitutions of Ohio and the United States, administrative rules and regulations, and the common law.'") (quoting *Painter v. Graley*, 639 N.E.2d 51, 52 (Ohio 1994)). Workplace policies are not included in that list. Thus, if Mitchell's reference to being terminated for "[a]sserting an employee's rights under the company policy," (Compl., Doc. 1, #15, ¶ 75), is intended to invoke Fujitec's company policy as the basis for his claim, then that fails to satisfy the clarity element.

For both of these reasons, Mitchell fails to allege a viable wrongful termination claim under Ohio law. Thus, the Court **DISMISSES** that claim, but as this is Mitchell's original Complaint, the dismissal is **WITHOUT PREJUDICE**. The Court **GRANTS** Mitchell 28 days to file an amended complaint addressing the above-identified shortcomings, if he can do so.

### B. Mitchell Plausibly Alleges A Claim For Defamation Against All The Defendants Other Than Fujitec Co., Ltd. (Count II).

"Defamation is a false publication that injures a person's reputation." *Fisher v. Ahmed*, 153 N.E.3d 612, 624 (Ohio Ct. App. 2020) (citation and quotation omitted). There are two types of defamation, slander and libel: the former is spoken, the latter is written. *See id.* The prima facie requirements for both are: (1) a false statement of fact, (2) that was defamatory, (3) that was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite intent in publishing the statement. *See id.* (citing *Am. Chem. Soc'y v. Leadscope, Inc.*, 978 N.E.2d 832, 852 (Ohio 2012)). "It is for the court to decide as a

matter of law whether certain statements alleged to be defamatory are actionable or not." *Am. Chem. Soc.*, 978 N.E.2d at 853 (quoting *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.*, 453 N.E.2d 666, 669 (Ohio 1983), *abrogated on other grounds*, *Welling v. Weinfeld*, 866 N.E.2d 1051 (Ohio 2007) (recognizing false light as a tort independent from defamation)); *Webber v. Ohio Dep't of Pub. Safety*, 103 N.E.3d 283, 296 (Ohio Ct. App. 2017) (same).

In terms of the publishing element, "[p]ublication … is a word of art, which includes any communication by the defendant to a third person." *Welling*, 866 N.E.2d at 1057. "[T]he publication requirement for defamation … only requires communication to a third party." *Byrne v. Univ. Hosp.*, 2011-Ohio-4110, 2011 WL 3630483, at *7 (Ohio Ct. App. Aug. 18, 2011).

Even if all five elements of the tort are present, though, a defamation claim still may fail. In particular, a given defendant may be able to invoke a "qualified privilege" that prevents recovery for defamation. *Hahn v. Kotten*, 331 N.E.2d 713, 718 (Ohio 1975). One scenario that gives rise to such a privilege is when a publication "is fairly made by a person in discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned." *Id.* (quotation omitted). This "qualified privilege is recognized in many cases where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it." *Id.*

A qualified privilege based on a "common interest" often arises in the context of an employment setting. Ohio law holds, for example, that "[g]enerally, a

communication made in good faith on a matter of common interest between an employer and an employee, or between two employees concerning a third employee, is protected by qualified privilege." *Sygula v. Regency Hosp. of Cleveland E.*, 64 N.E.3d 458, 467 (Ohio Ct. App. 2016) (quoting *Kanjuka v. Metrohealth Med. Ctr.*, 783 N.E.2d 920, 931 (Ohio Ct. App. 2002)). Although the privilege does not extend to all statements, it covers any "communication … reasonably calculated to protect or further [the shared interest]." *Hahn*, 331 N.E.2d at 718 (quoting 50 Am. Jur. 2d 698, Libel & Slander, § 195). Consistent with that, "[t]he elements necessary to establish the privilege are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." *Kanjuka*, 783 N.E.2d at 931 (internal quotations omitted).

Ohio law is also clear that this "qualified privilege doctrine applies to communications made in connection with sexual harassment complaints." *Zapata v. URS Energy & Constr., Inc.*, No. 3:13 CV 2203, 2015 WL 3953106, at *7–8 (N.D. Ohio June 29, 2015) (citing *Bisbee v. Cuyahoga Cnty. Bd. of Elections*, 2001 WL 204174, at *5–6 (Ohio Ct. App. 2001)); *see also Gintert v. WCI Steel, Inc.*, No. 2002-T-0124, 2007 WL 4376178, at *6 (Ohio Ct. App. Dec. 14, 2007) (holding that statements reporting sexual harassment are subject to qualified privilege); *Turner v. Wolf*, No. C-980712, 1999 WL 1127291, at *3–4 (Ohio Ct. App. Dec. 10, 1999) (same).

Importantly, though, the privilege is qualified, not absolute. An absolute privilege would completely immunize a speaker who allegedly committed defamation. By contrast, a qualified privilege, as its name suggests, can be overcome based on

16

certain showings. Two such situations can deprive a speaker of the intra-corporate common-interest privilege. First, as the privilege is predicated on the need for appropriate sharing of information within the corporate setting, the privilege is lost if the communication at issue is not "made in a reasonable manner and for a proper purpose," *Bisbee*, 2001 WL 204174, at *5; *Turner*, 1999 WL 1127291, at *3 (same), or is made to "someone outside of the qualified privilege." *Burrows v. Fuyao Glass Am. Inc.*, No. 3:17-CV-00186-TMR, 2017 WL 6262189, at *8 (S.D. Ohio Dec. 8, 2017) (citing *Stearns v. Ohio Sav. Assoc.*, 472 N.E.2d 372 (Ohio Ct. App. 1984)). Second, the qualified privilege is lost if the speaker acted with "actual malice." *Bisbee*, 2001 WL 204174, at *5 ("Proof of actual malice is essential to defeat a qualified privilege."); *Turner*, 1999 WL 1127291, at *3 (same). As to the latter, Ohio law defines actual malice "as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Zapata*, 2015 WL 3953106, at *8 (citing *Jackson v. City of Columbus*, 883 N.E.2d 1060, 1064 (Ohio 2008)); *Bisbee*, 2001 WL 204174, at *6 (same); *Turner*, 1999 WL 1127291, at *4 (same).

Against that substantive legal backdrop, there is the separate issue of what is required at the pleading stage, both in terms of the elements and in the face of a qualified privilege defense. On that front, while the Court applies Ohio's *substantive* law to Mitchell's state-law claims, the pleading requirements for those claims remain governed by federal law. *See, e.g.*, *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1259 (11th Cir. 2015) ("[W]hen federal courts are sitting in diversity or pendent jurisdiction only substantive state law must be applied, while

17

federal law governs matters of procedure.") (internal quotations omitted); *Leitch v. Wal-Mart, Inc.*, No. 3:19-CV-235, 2020 WL 7398700, at *2 (S.D. Ohio Dec. 17, 2020) ("And, although federal procedural law applies, federal courts apply state substantive law in cases where the federal court is exercising supplemental or diversity jurisdiction over state law claims."); *Lawless v. Steward Health Care Sys., LLC*, 894 F.3d 9, 21 (1st Cir. 2018) ("Since the district court adjudicated the state-law claim under supplemental jurisdiction, federal law supplies the applicable procedural rules and state law supplies the substantive rules of decision.").

Federal procedural law is clear that "Rule 9(b) does not apply to defamation claims; those claims need only be stated in accordance with Rule 8 of the Federal Rules of Civil Procedure." *Conocophillips Co. v. Shaffer*, No. 3:05 CV 7131, 2005 WL 2280393, at *1 (N.D. Ohio Sept. 19, 2005); *see also Wright v. Sodexho Marriott Servs.*, 30 F. App'x 566, 567 (6th Cir. 2002) (holding that defamation claim is subject to Fed. R. Civ. P. 8(a)(2)). As noted above, in addition to requiring notice to the defendant, Rule 8 also contains a plausibility requirement under *Twombly* and *Iqbal*. So, the plaintiff must plead sufficient facts to plausibly establish that each element of a defamation claim is present.

Then there is the separate question of the pleading required when the statement at issue appears to fall within a qualified privilege. Some Ohio courts appear to hold that a mere allegation that a defendant acted with "malice" or with knowledge of the statement's falsity is enough to survive a motion to dismiss. *See, e.g.*, *Mangelluzzi v. Morley*, 40 N.E.3d 588, 597 (Ohio Ct. App. 2015) ("Here, even

assuming that a qualified privilege attached to the communications published to the governmental entities identified in the complaint, the complaint pled that the [defendants] acted with 'malice.'"); *Denlinger v. City of Columbus*, No. 00AP-315, 2000 WL 1803923, at *9 (Ohio Ct. App. Dec. 7, 2000) (holding a complaint that alleges statements were made "with knowledge or [sic] their falsity, or with reckless disregard as to their truth" did not entitle defendants to dismissal based on the qualified privilege).

As noted, though, federal law governs pleading standards in federal court. And given the plausibility requirement, a complaint asserting a defamation claim as to which the actual malice standard applies must "set forth facts establishing [that the] statements [were] made with malice" to avoid dismissal. *Carovac v. Lake Cnty. Bd. of Dev.'l Disabilities/Deepwood*, No. 1:19-cv-2344, 2020 WL 5423966, at *5 (N.D. Ohio Sept. 9, 2020); *see also, e.g.*, *Hengjun Chao v. Mount Sinai Hosp.*, 476 Fed. App'x 892, 895 (2d Cir. 2012) (dismissing defamation claim where plaintiff failed to allege facts supporting plausible inference of malice). But, again, as a matter of substantive law, malice merely means knowledge of falsity or reckless disregard for the truth.

### 1. Mitchell Has Pled A Viable Defamation Claim Against McKenzie.

Using that legal framework, the Court starts with McKenzie's arguments for dismissing the defamation claim: (1) that Mitchell failed to identify the allegedly defamatory statements with sufficient specificity; (2) that the alleged statements were not published to a third party (a qualified-immunity defense); and (3) there is no evidence of harm.

### a. Mitchell Identified The Allegedly Defamatory Statements With Sufficient Specificity.

McKenzie's first argument challenges whether Mitchell's Complaint plausibly alleges that she made a defamatory statement. Whether a given statement is defamatory is a matter of law for the Court to decide. *Am. Chem. Soc'y*, 978 N.E.2d at 853. "Actionable defamation falls into one of two categories: defamation per se or defamation per quod." *McClure v. Ohio Dept. of Rehab. And Corr.*, No. 19AP-535, 2020 WL 1320713, at *2 (Ohio Ct. App. Mar. 19, 2020). As to the former, damages are assumed, but as to the latter, a plaintiff must plead, and ultimately prove, "special damages" which are "direct financial losses resulting from the plaintiff's impaired reputation." *Id.*; *see also, e.g.*, *Dudee v. Philpot*, 133 N.E.3d 590, 604 (Ohio Ct. App. 2019) ("In an action for defamation per quod, special damages must be pled and proven.").

Defamation per se under Ohio law is limited to statements that "fit within one of four classes: (1) the words import a charge of an indictable offense involving moral turpitude or infamous punishment; (2) the words impute some offensive or contagious disease calculated to deprive a person of society; (3) the words tend to injure a person in his trade or occupation; and (4) in cases of libel only, the words tend to subject a person to public hatred, ridicule or contempt." *McClure,* 2020 WL 1320713, at *2; *see also, e.g.*, *Dudee*, 133 N.E.3d at 604 (listing the first three categories above as those applicable to defamation per se for oral statements). In terms of specificity, "[a] defamation complaint must allege the substance of the allegedly defamatory

20

statements," but "need not … set [them] out verbatim." *Doe v. Univ. of Dayton*, No. 3:17-cv-134, 2018 WL 1393894, at *5 (S.D. Ohio Mar. 20, 2018).

So, let's see how the allegations in the Complaint stack up. To be sure, the Complaint does not purport to quote McKenzie, but the alleged facts give rise to a plausible inference that she reported that Mitchell had sexually harassed her, in particular by grabbing her around the waist, without her consent, in the company kitchen area. Whatever specific form a statement of that nature took, it seems of the type that would "tend to injure a person in his trade or occupation." *See, e.g.*, *Shoemaker v. Cmty. Action Org. of Scioto Cnty.*, 2007 WL 2070365, at *4 (Ohio Ct. App. July 16, 2007) (holding that false allegation of sexual harassment constituted defamation per se when it "caused [plaintiff] to lose his job"). When such allegations are true, "injury" to the harasser in his trade or occupation (i.e., an adverse employment action), may well be an appropriate response. But that is a separate issue. For defamation purposes, there can be little doubt that false allegations of such conduct—whatever their exact phrasing—can cause sufficient injury to support a defamation claim.

That is enough to establish the "substance" of the alleged statement. To be sure, at summary judgment, Mitchell may well be required to prove more about the substance of the statements than he has here. But, under Fed. R. Civ. P. 8, the only question is whether he has cleared the plausibility hurdle, and he has here.

### b. Mitchell Has Pled Sufficient Facts To Overcome The Qualified Immunity Defense At The Pleading Stage.

To get beyond dismissal, Mitchell must also allege facts plausibly establishing that the qualified privilege does not apply. He has done so here.

As described above, a speaker loses the qualified privilege if his or her statement is made with actual malice, which includes knowledge of falsity. Here, the statement from McKenzie at issue is something of the form—"Mitchell grabbed me around the waist while in the kitchen at work." Mitchell says that statement is false. Crediting Mitchell's allegation, as the Court must at the motion-to-dismiss stage, the Court concludes, for present purposes, that McKenzie made a knowingly false statement. That deprives her of the privilege. As the court put it in *JM Adjustments Services, LLC v. J.P. Morgan Chase Bank, N.A.*, No. 16-10630, 2016 WL 3913712, at *8 (E.D. Mich. July 20, 2016): "There exists a factual dispute as to whether Defendant had a good faith basis for the publication. At this stage in the proceedings, [plaintiff] is only required to plausibly plead malice, not prove it."

The Court concedes that this result is troubling in at least one regard. As McKenzie notes in her Motion, there is a strong public policy in favor of reporting workplace misconduct. The pleading rule reflected above, as she also notes, could have a chilling effect on such reporting. Essentially, any time a sexual harassment claim includes objectively verifiable facts (e.g., "Employee A inappropriately touched me at the office party"), and the accused person disputes those facts in his or her complaint in an objectively verifiable way (e.g., "I was never even in the same room as my accuser at that party"), that appears to be enough to survive dismissal. In such

22

cases, the plaintiff's allegation, if believed, necessarily entails that the defendant is lying, which under Ohio law deprives that person of the qualified privilege. *See Gintert*, 2007 WL 4376178, at *6 (holding that qualified privilege would not apply if a sexual harassment allegation is false).

That means that such claims are not subject to dismissal. Indeed, if it truly comes down to a credibility determination between two parties, the claim may even proceed past summary judgment. But that in turn means that those who honestly report workplace misconduct may be subject to potentially significant litigation costs in establishing their report's veracity. Nor is that the end of the litigation that this approach may spawn. Those accused of defamation in such cases sometimes respond by themselves counterclaiming for retaliation. *See, e.g., Hughes v. Miller*, 909 N.E.2d 642, 643–44 (Ohio Ct. App. 2009) (allowing counterclaim for retaliation against defamation plaintiff to proceed even after plaintiff's defamation claim dismissed); *Bahar v. Youngstown*, No. 09 MA 55, 2011 WL 773403, at *3 (Ohio Ct. App. Feb. 25, 2011). The resulting morass of litigation seems potentially at odds with the public interest in identifying and remedying workplace misconduct.

Perhaps one way of addressing the types of public policy concerns that McKenzie identifies would be to require, for defamation claims of this type, a heightened showing of malice at the pleading stage—some kind of "actual falsity plus" standard, where the "plus" would reflect a requirement that a plaintiff provide some additional facts creating a plausible reason to believe why an accuser may have leveled knowingly false allegations. But that does not work here for two reasons.

First, it does not appear that Ohio law has adopted any such requirement. And, under *Erie*, this Court's job in adjudicating Ohio state-law claims is to ensure that "the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945).

Second, even if this Court were free to add such a requirement to an Ohio common-law claim for defamation, Mitchell has met it here. His Complaint includes a relatively detailed account of why he believes McKenzie would be likely to make false allegations against him. In particular, he recounts that he had been investigating McKenzie and a colleague for workplace misconduct, misconduct that placed McKenzie herself at risk of termination. Against that backdrop, he alleges that McKenzie made a preemptive strike against him, so that if she were to suffer an adverse employment action as a result of his investigation, she could claim retaliation. Again, at the pleading stage the question is merely one of plausibility, and such allegations, if true, give rise to a plausible motive for McKenzie to file a complaint against Mitchell. Thus, even if "motive" allegations were required, Mitchell has provided them here.

### c. Mitchell Has Plausibly Alleged Evidence Of Harm.

One of the elements of defamation is that the statement caused harm. In her final argument for dismissal, McKenzie claims there are insufficient allegations that her alleged statements here caused Mitchell's identified harm (i.e., his termination). She notes that Mitchell himself concedes that Krupp, in telling Mitchell he was

terminated, pointed to Mitchell's alleged mishandling of allegations relating to Gibson's wrongdoings as the basis for that termination decision. That is, Krupp did not tie the termination to McKenzie's allegations of sexual harassment. McKenzie argues that, because Fujitec had sufficient alternative grounds to fire Mitchell independent of her sexual harassment allegations, and actually stated those alternative grounds were the basis for dismissal, Mitchell's defamation claim against her fails.

In addressing that argument, the Court begins by noting that, under Ohio law, damages for defamation come in two forms. When dealing with defamation per se, damages are assumed. For defamation per quod, on the other hand, a plaintiff must prove "special damages" which are "direct financial losses resulting from the plaintiff's impaired reputation." *McClure,* 2020 WL 1320713, at *2; *see also, e.g., Dudee*, 133 N.E.3d at 604 ("In an action for defamation per quod, special damages must be pled and proven.").

As noted above, Ohio law treats false allegations of sexual harassment as defamation per se. *See, e.g., Shoemaker*, 2007 WL 2070365. In *Shoemaker*, for example, the court observed that: "Shoemaker testified that the statements concerning his alleged sexual harassment of a co-worker were false and caused him to lose his job. Accordingly, he presented a claim of defamation per se and had no need to plead or prove special damages." *Id*. at *4. The "pleading" part of that statement is irrelevant for present purposes, as pleading standards in this case are supplied by federal law. But the "prove" part of that statement does matter—it means

that Ohio's substantive law does not require any showing of special damages for defamation of the type allegedly at issue here, and that Mitchell is entitled to "at least nominal damages" even if he could show no actual damages. *Id.* at *3.

Separately, even were that not the case—that is, even if the statements here are defamation per quod—Mitchell has identified direct financial losses (his salary) resulting from his impaired reputation. To be sure, Krupp stated he was tying the termination to events relating to Mitchell's treatment of Gibson, but Mitchell is not required to accept Krupp's explanation without further investigation. Indeed, the timing alone makes the potential causal link to McKenzie's allegations at least plausible—Mitchell is investigated for sexual harassment, he is then informed the company has concluded that the allegations are well founded, and that very day he is terminated. What is more, Mitchell alleges that the Gibson incident occurred "years prior" to Mitchell's termination, and that his knowledge about Gibson's misconduct only "arose out of rumors." (Compl., Doc. 1, #12, ¶ 59). Using a common-sense standard, that plausibly establishes a causal link, at least for pleading purposes, between McKenzie's complaint and Mitchell's termination. *Iqbal*, 556 U.S. at 679 (noting that plausibility determination is a matter of "judicial experience and common sense"). To be sure, if discovery does not bear out that link, that will present a problem for Mitchell on summary judgment. But Mitchell has alleged enough at this stage to get beyond dismissal.

In short, Mitchell has plausibly alleged a claim of defamation against McKenzie for her (allegedly) knowingly false reports of sexual harassment.

26

2. **Mitchell Has Pled A Viable Defamation Claim Against Gary Krupp And Fujitec America, Inc., But Not Against Fujitec Co., Ltd.**

The analysis involving Gary Krupp gets to the same endpoint, but via a slightly different route. Mitchell alleges that Krupp discussed with colleagues the same allegations made by McKenzie. Thus, the substance of those statements suffices on the defamation front for the same reason that it did with regard to McKenzie.

As with McKenzie, Krupp also claims that the statements, even if he made them, are subject to a qualified privilege. And, he says, Mitchell has not pled any facts showing that Krupp knew that the statement was untrue.

Krupp is in a somewhat different boat than McKenzie as to known falsity. He is not alleged to have been present when the activity occurred, and thus may have a good faith belief in McKenzie's account, even if her report is false. But knowing a statement is false is only one of *two* ways by which a speaker can lose the benefit of the qualified privilege. The qualified privilege for intra-corporate communications is also lost if the publication is not "made in a reasonable manner and for a proper purpose." *Bisbee*, 2001 WL 204174, at *5; *Turner*, 1999 WL 1127291, at *3 (same). So, for example, if Krupp had republished the statements in connection with the investigation of them, that publication would fall within the privilege (absent allegations plausibly establishing that he knew the statements were false). But, here, Mitchell alleges that the republishing occurred at a social gathering with other employees. In other words, Mitchell claims that Krupp defamed him by spreading workplace gossip. That at least plausibly suggests that the republishing may not have been in furtherance of any corporate investigation, but instead was for Krupp's own

purposes. If that is the case, then the qualified privilege would not apply. So, reading the allegations in the light most favorable to Mitchell, as the Court must, that is enough to get beyond Rule 12(b)(6).

The corporate defendants, on the other hand, suggest that Mitchell's claim fails because it does not allege that the corporations themselves said anything. That works as to the Fujitec Co. Ltd. (the parent company), but not as to Fujitec America. As for the latter, Krupp is alleged to be the CEO of the company. Thus, his tortious conduct and statements in his role as CEO could be imputed to the corporation for which he serves as the lead executive officer. *See Gallagher v. Stonegate Mortg. Corp.*, No. 99684, 2013 WL 6858040, at *6 (Ohio Ct. App. Dec. 26, 2013) (holding corporation liable for defamation because defendant CEO "used his position" to defame plaintiff). That is enough, for now, to allow the claim to go forward.

For the parent company, though, that is not the case. As a general matter, the common law treats separate corporate entities separately, even if they are parent and subsidiary. *See, e.g.*, *Excel Energy, Inc. v. Cannelton Sales Co.*, 337 F. App'x 480, 485 (6th Cir. 2009) ("[S]ubsidiaries are separate and distinct legal entities from their parents and only if there is reason to pierce the corporate veil will a court treat a parent and a subsidiary as a single entity."). Mitchell would need to plead some fact creating a plausible inference that the subsidiary was acting as an agent for the parent with regard to the statements at issue. He has pled no such thing. Thus, the claim fails against Fujitec Co. Ltd.

In sum, Mitchell has pled a viable defamation claim against McKenzie, Krupp, and Fujitec America, but not against Fujitec Co. Ltd. Thus, the Court **DISMISSES** Mitchell's defamation claim **WITH PREJUDICE**, but only with respect to Fujitec Co. Ltd.

### C. Mitchell Fails To Plausibly Allege A Claim For Invasion of Privacy (Count III) Or False Light (Count IV).

Under Ohio law, in order to establish a claim for invasion of privacy by publication of private facts, a plaintiff must show five elements:

> (1) There must be publicity; the disclosure of a public nature, not private. "Publicity" means communicating the matter to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge as opposed to "publication" that term of art is used in connection with liability for defamation as meaning any communication by the defendant to a third person.

> (2) The facts disclosed must be those concerning the private life of an individual, not his public life. There is no liability when the defendant merely gives further publicity to information about the plaintiff that is already public, such as matters of public record about his birth or marriage date, or matters that the plaintiff leaves open to the public eye, such as kissing his spouse in public.

> (3) The matter publicized must be one which would be highly offensive and objectionable to a reasonable person of ordinary sensibilities.

> (4) The publication must have been made intentionally, not negligently.

> (5) The matter publicized must not be a legitimate concern to the public. A newspaper's publicizing "legitimate news" ordinarily will not be actionable.

*Early v. The Toledo Blade*, 720 N.E.2d 107, 135–36 (Ohio Ct. App. 1998) (quotation omitted).

Measured against this standard, Mitchell's claim fails for two reasons. First, Mitchell fails to plausibly allege that Krupp, the sole Defendant against whom he asserts this claim, "publicized" Mitchell's alleged sexually harassing behavior to the extent necessary to sustain an invasion of privacy claim. At most, Mitchell contends that Krupp improperly "discussed the details of the [sexual harassment] inquiry with several Fujitec employees during a social gathering." (Compl., Doc. 1, #8, ¶ 42). Sharing information within the corporation with "several" employees is not "communicating the matter to the public at large." *Early*, 720 N.E.2d at 135. Thus, the claim fails as a matter of law.

Second, the crux of an invasion of privacy claim is that the defendant has shared *true*, but private, facts about the plaintiff. Here, Mitchell alleges that Krupp shared *untrue* facts. That may give rise to a claim for defamation, but it does not support a claim for invasion of privacy. The Court thus **DISMISSES** the claim but **WITHOUT PREJUDICE**, as this is the first dismissal of this claim. The Court **GRANTS** Mitchell leave to file an amended complaint, within twenty-eight days, addressing the above-identified shortcomings, if he can.

### D. Mitchell Fails To Plausibly Allege A Claim For False Light (Count IV).

The tort of false light subjects a defendant to liability for invasion of privacy if (1) "the false light in which the other was placed would be highly offensive to the reasonable person," and (2) "the actor had knowledge or acted with reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Welling*, 866 N.E.2d at 1059. Adopting the Restatement (Second) of Torts

definition for false-light invasion of privacy, the Ohio Supreme Court in *Welling*, 866 N.E.2d at 478, recognized that "[t]he requirements imposed by the Restatement make a false-light claim difficult to prove."

Of particular importance here, a false light claim, like an invasion of privacy claim, requires that "the information must be 'publicized,' which is different from 'published.'" *Id.* at 1057. "Publicity … means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* Something that is publicized "reaches, or is sure to reach, the public." *Id.* (quoting Restatement (Second) of Torts, § 652D, cmt. a).

For the same reason that Mitchell's allegations failed to show "publicity" to support the invasion of privacy claim, they also fail to establish that element of a false light claim. Gossip shared among a few coworkers, even in a public place, does not amount to publicity. The Court thus **DISMISSES** the claim but **WITHOUT PREJUDICE**, as this is the first dismissal of this claim. The Court **GRANTS** Mitchell leave to file an amended complaint, within twenty-eight days, addressing the above-identified shortcomings, if he can.

**E.    The Court Dismisses Mitchell's Claim For Breach Of Implied Contract Against The Fujitec Corporate Defendants, But Does So Without Prejudice (Count V).**

It appears that Mitchell asserts the breach-of-implied-contract claim only against Fujitec America, his employer.[3] As a general matter, to successfully state a breach of implied contract claim under Ohio law in federal court, a plaintiff must plausibly allege "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Johnson v. Delphi Corp.*, 261 F. Supp. 2d 955, 961 (S.D. Ohio 2003). The Fujitec Defendants' principal contention here seems to be that Mitchell has not plausibly alleged a contract exists. In particular, the parties dispute whether he can rely on "employee handbooks, company policies, and/or oral representations by persons authorized to bind the Company" to meet that element. (Compl., Doc. 1, #18, ¶ 98).

Fujitec disputes Mitchell's position, claiming that it is "well settled under Ohio law that employee handbooks and employer policies are not in and of themselves contracts of employment." (Fujitec Mot., Doc. 11, #80). It purports to find that proposition in *Finsterwald-Maiden v. AAA S. Cent. Ohio*, 685 N.E.2d 786, 789 (1996). But that overreads *Finsterwald-Maiden*. The case does not say that employee handbooks *cannot* be contracts, but merely that they are not *necessarily* contracts.

---

[3] The only "implied contract" he cites is one "between Plaintiff and Fujitec," with "Fujitec" identified later in that same paragraph as the "Company." (Compl., Doc. 1, #18, ¶98). The Company is a defined term referring to Fujitec America. Thus, to the extent he purports to assert this Count against either McKenzie or Krupp, the claim is **DISMISSED WITH PREJUDICE**.

Indeed, in the passage immediately before the language defendants cite, the court made exactly that point:

> "[A]t will" is only a description of the parties' prima facie employment relationship. That description intimates nothing about subsidiary contractual arrangements an employer may make by adding new terms and conditions to the relationship. If an employer makes a subsidiary contractual arrangement, the employer may be legally obligated to comply with it. *An employee handbook may create such a contractual arrangement.*

*Id.* at 789 (emphasis added). To that end, "an employee handbook can create a binding contract if it contains clear promissory language that the employee accepts by continuing to work after receiving it." *Galgoczy v. Chagrin Falls Auto Parts, Inc.*, 2010-Ohio-4684, 2010 WL 3816328, at *1 (Ohio Ct. App. Sept. 30, 2010) (citing *Mers v. Dispatch Printing Co.*, 483 N.E.2d 150 (Ohio 1985) (paragraph two of the syllabus)).

That being said, the Court agrees with the Fujitec Defendants that, at least so far, Mitchell has fallen short in identifying either (1) the specific substantive portions of the employee handbooks, company policies, or oral representations that create the alleged contractual obligations at issue, and (2) the "clear promissory language" in those handbooks, policies, or representations that entitle Mitchell to rely on them as contractual obligations. But that does not mean that such language does not exist.

Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** the breach-of-implied-contract claim against the Fujitec corporate defendants, and **GRANTS** Mitchell leave, within twenty-eight days, to amend his allegations in this Count to provide additional factual detail giving rise to a plausible inference that the materials to which he cites create implied contractual obligations.

**F.     Mitchell's Claim For Breach Of Good Faith And Fair Dealing Fails As A Matter Of Law (Count VI).**

Under Ohio law, breach of the implied covenant of good faith and fair dealing is not a standalone claim. *Frisch v. Nationwide Mut. Ins. Co.*, 553 Fed. App'x 477, 482 (6th Cir. 2014). That is equally true in the employment context, as "Ohio does not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in the case of a wrongful discharge of an at-will employee." *Borowski v. State Chem. Mgf. Co.*, 647 N.E.2d 230, 236 (Ohio Ct. App. 1994). In short, although Mitchell's claim for breach of implied contract may include a claim for breach of this covenant, the covenant does not provide a standalone claim. Accordingly, the Court **DISMISSES** this claim **WITH PREJUDICE**.

**G.     Mitchell's Claim For Promissory Estoppel (Count VII).**

"The elements of promissory estoppel are: (1) a clear, unambiguous promise; (2) reliance upon the promise by the person to whom the promise is made; (3) the reliance is reasonable and foreseeable; and (4) the person claiming reliance is injured as a result of reliance on the promise." *Jelinek v. Abbott Labs.*, No. 01AP-217, 2001 WL 1045534, at *4 (Ohio Ct. App. Sept. 13, 2001). "The doctrine of promissory estoppel is applicable to at-will employment relationships." *Id.* "[T]he test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee." *Id.*

The only element that the Fujitec Defendants dispute is "any specific promises." (Fujitec Mot., Doc. 11, #82). But Mitchell's Complaint lists six specific

promises that Fujitec allegedly made. (Compl., Doc. 1, #20, ¶108). Those promises appear sufficiently specific to the Court to support a claim for promissory estoppel. Indeed, one of the alleged promises goes to the magnitude of Mitchell's annual bonus, which he says was promised to the one-tenth-of-one-percent. (*Id.* (alleging Fujitec promised to pay "an annual bonus of 17.5%")). Mitchell may, or may not, have difficulty showing that these promises were actually made, or in meeting some of the other elements of this claim. But, the Fujitec Defendants' argument that he has not identified any specific promises falls short.

Accordingly, the Court **DENIES** the Fujitec Defendants' Motion to Dismiss the promissory estoppel count.[4]

## H.    Title VII Discrimination (Count VIII).

Various Defendants seek dismissal of the Title VII discrimination claim on differing grounds. McKenzie urges dismissal because she is Mitchell's co-worker, not his employer. In a related defense, Krupp argues for dismissal given that Title VII does not impose individual liability. Finally, all three Fujitec Defendants (Krupp and the two corporate entities) request dismissal on the grounds that Mitchell failed to identify in his Complaint the similarly situated Caucasian employees who allegedly received better treatment. The Court will address the arguments in that order.

To start, McKenzie rightly states that Mitchell does not have a viable Title VII claim against her. "Title VII does not permit individual liability." *Hopkins v. Canton*

---

[4] The promissory estoppel count does not identify any promises that McKenzie allegedly made to him. Thus, to the extent that Mitchell is purporting to assert this count against McKenzie, the Court **DISMISSES** the claim **WITH PREJUDICE** as to her.

*City Bd. Of Educ.*, 477 F. App'x 349, 360 (6th Cir. 2012). As noted below, a narrow exception to that rule exists for supervisors, who can sometimes be sued in their "official capacities," but that exception does not extend to McKenzie, who is not alleged to be Mitchell's supervisor. Thus, the Title VII discrimination claim against McKenzie is **DISMISSED WITH PREJUDICE**.

The analysis is a little different as to Krupp. It is true that Title VII does not include individual liability, even for supervisors. Indeed, "[t]he law in this Circuit is clear that a supervisor who does not otherwise qualify as an employer cannot be held personally or individually liable under Title VII." *Little v. BP Expl. & Oil Co.*, 265 F.3d 357, 362 (6th Cir. 2001) (citing *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997)). That being said, "there is support for the proposition that a supervisor may be held liable in his or her official capacity upon a showing that he or she could be considered the 'alter ego' of the employer," *id.* at 362, n.2, although the Sixth Circuit has not definitively ruled on the issue. What is more, "district courts in this circuit have considered this alter ego theory of individual liability 'with skepticism.'" *Bender v. Gen. Dynamics Land Sys., Inc.*, No. 2:19-CV-13177, 2020 WL 4366049, at *3 (E.D. Mich. July 30, 2020) (citing *Doe v. Grand Co., LLC*, No. 18-cv-13123, 2020 WL 806031, at *9 (E.D. Mich. Feb. 18, 2020) (collecting cases)).

That being said, to the extent that the exception exists, it could perhaps sweep in Krupp, who is Fujitec America's CEO. But, then a separate problem emerges. "[T]he employer and only the employer can be responsible for any relief the employee obtains, even if under the official capacity theory." *Ankofski v. M&O Mktg., Inc.*, 218

36

F. Supp. 3d 547, 553 (E.D. Mich. 2016) (citing *Cautela v. Ohashi Tecnica U.S.A., Inc.*, No. 2:08-cv-960, 2009 WL 2431090, at *3–4 (S.D. Ohio Aug. 6, 2009)). Thus, "when an employee has already sued a corporate employer under Title VII, an official capacity suit against a supervisor adds nothing to the litigation." *Id.* (citing *Maudlin v. Inside Out Inc.*, No. 3:13-CV-00354-TMR, 2014 WL 1342883, at *3 (S.D. Ohio Apr. 3, 2014)). As "an official capacity suit is redundant and duplicative of the suit against [the employer]," the Court **DISMISSES** the claim against Krupp **WITH PREJUDICE**. *Maudlin*, 2014 WL 1342883, at *4.

With those preliminaries out of the way, the Court turns to the claim against the corporate defendants.[5] The sole basis for their request for dismissal is their belief that Title VII pleading standards require the plaintiff to identify the comparators for his race discrimination claim. Although Mitchell claims no such requirement exists, there is case law suggesting that plausibility requires at least *some* identification of those who allegedly received better treatment. *See Sammons v. Cardington Yutaka Techs., Inc.*, No. 2:08-cv-988, 2009 WL 961168 *3 (S.D. Ohio April 7, 2009). And even the case on which Mitchell relies to dispute that requirement, *Turner v. UPS*, acknowledged that a Title VII claim "will typically require at least some degree of detail regarding any comparator employees on which a plaintiff relies, in order for the court to evaluate whether … an inference [of discrimination] can be drawn." No.

[5] Interestingly, the parent company did not rely on its corporate separateness to seek dismissal of the claim against it. As such, the Court declines to comment on that potential theory.

3:19-CV-00476, 2019 WL 5190992, at *4 (M.D. Tenn. Oct. 15, 2019). Mitchell has failed to provide any such detail here.

Accordingly, the Court **DISMISSES** the Title VII discrimination claim against the corporate defendants, but **WITHOUT PREJUDICE**. The Court **GRANTS** Mitchell leave to make good on the representation in his motion that he can file an amended pleading providing additional detail regarding those comparator employees. And the Court provides Mitchell twenty-eight days in which to do so.

## I.     Mitchell Fails To State A Viable Title VII Retaliation Against McKenzie Or Krupp (Count IX).

Only McKenzie and Krupp seek dismissal of the Title VII retaliation count. As with the Title VII discrimination count, the crux of their argument is that Title VII does not impose individual liability. For the same reasons that the Court dismissed the Title VII discrimination claim, the Court also **DISMISSES WITH PREJUDICE** the Title VII retaliation claims against these two defendants.

## J.     The Court Dismisses The State-Law Discrimination Claims As To All Defendants, But Does So Without Prejudice (Count X).

In addition to a Title VII discrimination claim, Mitchell also asserts a race discrimination claim under corresponding Ohio law. *See generally* O.R.C. § 4112. The pleading standards are the same for both. *Garcar v. City of Youngstown*, No. 4:17CV1698, 2019 WL 969401, at *1 (N.D. Ohio Feb. 28, 2019) ("The Court observes that Chapter 4112 of the Ohio Revised Code tracks Title VII of the federal Civil Rights Act of 1964 both with respect to substantive law and evidentiary standards."); *Finley v. City of Trotwood*, 503 F. App'x 449, 452 (6th Cir. 2012). ("Although this case

38

involves both Title VII and Ohio antidiscrimination law, the same analysis applies to both."). The one exception is that Ohio law allows for individual liability, while, as noted above, Title VII does not. *Finley*, 503 F. App'x at 452, n.2.

But that exception may matter. McKenzie seeks dismissal of this claim principally on the ground that she is not Mitchell's employer. But, under Ohio law, that is not dispositive, as Mitchell can sue any individual who engaged in discriminatory conduct. That being said, he must also set forth a plausible claim, and McKenzie argues that Mitchell has "failed to allege or provide any factual support" for this claim. Here, the only alleged act by McKenzie in the long list of allegedly discriminatory acts was "making false allegations of harassment." (Compl., Doc. 1, #24). But nowhere in his Complaint does Mitchell suggest any reason to believe that McKenzie made such false allegations based on his race. To the contrary, he alleges that she did so to avoid suffering the consequences for her own workplace misconduct. That may be an inappropriate motive, but it is not race discrimination. Accordingly, the Court **DISMISSES** Count X against McKenzie, but does so **WITHOUT PREJUDICE**, as this is the first dismissal of the claim.

As against the Fujitec Defendants, including Krupp, the state-law discrimination claim has the same problem that the Title VII one did—insufficient identification of the allegedly-better-treated employees. Accordingly, the Court **DISMISSES** the state-law discrimination claim against these defendants, but again does so **WITHOUT PREJUDICE**. The Court **GRANTS** Mitchell leave to file an

amended complaint, within twenty-eight days, addressing the above-identified shortcomings, if he can.

## K. The State-Law Retaliation Claims Fail As A Matter Of Law To The Extent They Are Asserted Against McKenzie (Count XI).

The only Defendant who seeks dismissal of the state-law discrimination claim is McKenzie. In support, she notes that she is not Mitchell's employer. That does not seem to defeat a state-law discriminatory retaliation claim (as state law allows for individual liability), but Mitchell makes no argument in response. Accordingly, any argument he may have made is waived. Moreover, the Court's independent review of the allegations in that count identify no allegedly retaliatory conduct by McKenzie. Accordingly, for both reasons, the Court **DISMISSES** the state-law retaliation claim against McKenzie **WITH PREJUDICE**.

## L. Mitchell Fails To Plausibly State A Claim For Intentional Infliction of Emotional Distress Against Any Defendant (Count XII).

Under Ohio law, a "claim for intentional infliction of emotional distress requires proof of the following elements: '(1) the defendant either intended to cause, or knew or should have known, that his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure it.'" *Walters v. Carter*, No. 108555, 2020 WL 1066063, at *7 (Ohio Ct. App. Mar. 5, 2020) (quoting *Ashcroft v. Mt. Sinai*

*Med. Ctr.*, 588 N.E.2d 280 (Ohio Ct. App. 1990)). Here, the defendants' arguments are principally directed at the "extreme and outrageous" conduct element, specifically that Mitchell has not alleged any conduct that meets that standard. The Court finds those arguments persuasive.

"Extreme and outrageous" is a high bar. "Conduct giving rise to an IIED claim must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Kovac v. Superior Dairy, Inc.*, 930 F.Supp.2d 857, 869–70 (N.D. Ohio 2013) (citing *Long v. Ford Motor Co.*, 193 Fed. App'x 497, 503 (6th Cir. 2006)). And the bar is, if anything, even higher in the employment context. *Culler v. Exal Corp.*, 193 F. Supp. 3d 850, 852–53 (N.D. Ohio 2016) ("Ohio places a particularly high bar on 'extreme and outrageous' conduct in the employer-employee relationship."). Moreover, the question of whether conduct is "extreme and outrageous" is a matter of law for the Court. *Mender v. Chauncey*, 2015-Ohio-4105, 41 N.E.3d 1289, 1299 (Ohio Ct. App. 2015). That means a ruling "in defendant's favor is warranted when the conduct is not, as a matter of law, 'extreme and outrageous.'" *Id.* at ¶ 25.

Importantly, at least one Ohio court has held as a matter of law that "falsely accusing [the plaintiff] of engaging in sexual harassment and violating" the company's policies, is not extreme or outrageous conduct. *Adkins v. DuPont Vespel Parts & Shapes, Inc.*, No. 88352, 2007 WL 1643208, at * 2 (Ohio Ct. App. June 7,

41

2007). Given the high bar for showing extreme and outrageous conduct, that seems a correct statement of Ohio law.

Against that backdrop, Mitchell's Complaint fails to allege that the Defendants engaged in "extreme and outrageous" conduct. At bottom, Mitchell alleges that McKenzie made false allegations that he sexually harassed her. While false allegations such as those—if in fact they were false—may be reprehensible, they fall short of extreme and outrageous. And Krupp, at most, appears to have shared those allegations with co-workers in a social setting. Again, that may well have been inappropriate, but it is well short of extreme and outrageous. Thus, even if the individual Defendants intentionally undertook that activity for the purpose of inflicting emotional harm on Mitchell, such conduct simply does not give rise to a claim for intentional infliction.

In short, Mitchell has not plausibly alleged the necessary elements for an intentional infliction of emotional distress claim. The Court thus **DISMISSES** the claim but **WITHOUT PREJUDICE**, as this is the first dismissal of this claim. The Court **GRANTS** Mitchell leave to file an amended complaint, within twenty-eight days, addressing the above-identified shortcomings, if he can.

## CONCLUSION

Based on the above, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendant McKenzie's Motion To Dismiss (Doc. 10), and **GRANTS-IN-PART** and **DENIES-IN-PART** the Fujitec Defendants' Motion to Dismiss (Doc. 11). As a result, the Court **DISMISSES WITH PREJUDICE** Counts 1, 5, 6, 7, 8, 9, and 11 to the

extent that those Counts are directed toward McKenzie; **DISMISSES WITH PREJUDICE** Counts 5, 6, 8, and 9 to the extent those Counts are directed toward Krupp; **DISMISSES WITH PREJUDICE** Count 6 to the extent that this Count is directed to Fujitec America; **DISMISSES WITH PREJUDICE** Count 6 to the extent this Count is directed toward Fujitec Co. Ltd; **DISMISSES WITHOUT PREJUDICE** Counts 1, 10, and 12 to the extent that those Counts are directed to McKenzie; **DISMISSES WITHOUT PREJUDICE** Counts 1, 5, 8, 10, and 12 to the extent that those Counts are directed to Fujitec Co. Ltd and Fujitec America; and **DISMISSES WITHOUT PREJUDICE** Counts 1,3, 4, 10, and 12 as regarding Krupp. As to any claim dismissed without prejudice, the Court also **GRANTS** Mitchell leave to file an amended complaint within twenty-eight days providing additional factual support, if he is able, to address the issues specifically identified above. In doing so, the Court is not granting Mitchell leave to file an amended complaint more broadly, but only to respond to those specific issues.

> **SO ORDERED.**

February 8, 2021
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**