## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| DARRYL MITCHELL, ) | |
| ) | CIVIL ACTION FILE |
| Plaintiff, ) | |
| v. ) | NO. 1:20-cv-00363-DRC |
| ) | |
| FUJITEC AMERICA, INC., FUJITEC CO., ) | |
| LTD., GARY KRUPP and SHAWNEZ ) | |
| MCKENZIE, ) | |
| ) | |
| Defendants. ) | |
| ) | |

### DEFENDANTS FUJITEC AMERICA, INC., FUJITEC CO., LTD., AND GARY KRUPP'S MOTION TO PARTIALLY DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants Fujitec America, Inc., Fujitec Co., Ltd., and Gary Krupp (collectively, the "Fujitec Defendants"), by and through their undersigned counsel, file this, their Motion to Partially Dismiss Plaintiff's First Amended Complaint. As delineated in the attached Memorandum of Law, the Fujitec Defendants respectfully move this Court for an Order partially dismissing Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6) on account of Plaintiff's failure to state a claim which entitles him to relief.

Wherefore, the Fujitec Defendants submit that the Court should grant their Motion to Partially Dismiss Plaintiff's Claims and any other relief that it deems necessary.

Respectfully submitted, this 22nd day of March, 2020.

Respectfully submitted,

*s/Martin B. Heller*
Martin B. Heller (GA Bar No. 360538)*
JonVieve D. Hill (GA Bar No. 907946)*
*Admitted *Pro Hac Vice*
FISHER & PHILLIPS LLP
1075 Peachtree Street NE, Suite 3500

- 2 -

Atlanta, Georgia 30309
Telephone: (404) 231-1400
Facsimile: (404) 240-4249
mheller@fisherphillips.com
jhill@fisherphillips.com

Jazmyn J. Stover (0088580)
FISHER & PHILLIPS LLP
200 Public Square, Suite 4000
Cleveland, Ohio 44114
Telephone: (440) 838-8800
Facsimile: (440) 838-8805
jstover@fisherphillips.com

*Counsel for Defendants Fujitec America, Inc., Fujitec Co., Ltd., and Gary Krupp*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

| | |
|---|---|
| DARRYL MITCHELL, ) </br> ) </br> Plaintiff, ) </br> v. ) </br> ) </br> FUJITEC AMERICA, INC., FUJITEC CO., ) </br> LTD., GARY KRUPP and SHAWNEZ ) </br> MCKENZIE, ) </br> ) </br> Defendants. ) </br> ) | CIVIL ACTION FILE </br></br> NO. 1:20-cv-00363-DRC |

**DEFENDANTS FUJITEC AMERICA, INC., FUJITEC CO., LTD., AND GARY KRUPP'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO PARTIALLY DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants Fujitec America, Inc. ("Fujitec America"), Fujitec Co., Ltd. ("Fujitec Co."), and Gary Krupp ("Krupp") (collectively, the "Fujitec Defendants") submit this, their memorandum of law in support of their motion pursuant to Fed. R. Civ. Proc. 12(b)(6) to dismiss Plaintiff Darryl Mitchell's ("Plaintiff") claims on the grounds that Plaintiff fails to state a claim upon which relief can be granted.

## I. INTRODUCTION

Plaintiff filed a kitchen-sink Complaint against the Fujitec Defendants, alleging a mire of ancillary claims for wrongful termination and defamation, many of which were duplicative and without legal merit. The Fujitec Defendants moved to dismiss the majority of Plaintiff's claims on the basis that Plaintiff failed to state a claim upon which relief could be granted. The Court granted, in part, the Fujitec Defendants motion, and dismissed several of Plaintiff's claims, some with prejudice and some without prejudice. In response, Plaintiff filed a First Amended Complaint, which suffers from many of the same deficiencies as the initial Complaint, and which

fails completely to resolve many of the maladies that plagued the original filing. Given Plaintiff's multiple opportunities to remedy the shortcomings of his allegations, the Fujitec Defendants respectfully request that this Court dismiss the following claims with prejudice: Plaintiff's Wrongful Termination claim in Count I against the Fujitec Defendants, Plaintiff's Invasion of Privacy by Publication of Private Facts claim in Count III against Krupp, Plaintiff's False Light Invasion of Privacy claim in Count IV against Krupp, Plaintiff's Breach of Implied Contract claim in Count V against Krupp, Plaintiff's Promissory Estoppel, discrimination, and retaliation claims in Counts VI, VII, VIII, IX, and X against Fujitec Co., and Plaintiff's Intentional Infliction of Emotional Distress ("IIED") claim in Count XI against the Fujitec Defendants.

## II.     PROCEDURAL BACKGROUND

Plaintiff filed his Complaint on May 7, 2020. [Doc. 1.] On July 6, 2020, the Fujitec Defendants moved to dismiss the majority of Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6) because of Plaintiff's failure to state a claim which entitles him to relief. [Doc. 11.] On February 8, 2021, the Court granted, in part, the Fujitec Defendants' motion, and dismissed (1) Plaintiff's wrongful termination claim in Count I against the Fujitec Defendants without prejudice; (2) Plaintiff's defamation claim in Count II against Fujitec Co. with prejudice; (3) Plaintiff's Invasion of Privacy by Publication of Private Facts claim in Count III, pled only against Krupp, without prejudice; (4) Plaintiff's False Light Invasion of Privacy claim in Count IV, pled only against Krupp, without prejudice; (5) Plaintiff's Breach of Implied Contract claim in Count V against Krupp with prejudice and against Fujitec America and Fujitec Co. without prejudice; (6) Plaintiff's Good Faith and Fair Dealing claim in Count VI against the Fujitec Defendants with prejudice; (7) Plaintiff's Title VII discrimination claim in Count VIII against Krupp with prejudice and against Fujitec America and Fujitec Co. without prejudice; (8) Plaintiff's Title VII retaliation claim in

Count IX against Krupp with prejudice; (9) Plaintiff's state law discrimination claim in Count X against the Fujitec Defendants without prejudice; and (10) Plaintiff's IIED claim in Count XII against the Fujitec Defendants without prejudice. [Doc. 18.]

### III. SUMMARY OF COMPLAINT ALLEGATIONS

On February 27, 2021, Plaintiff filed a First Amended Complaint. [Doc. 19.] The allegations in the First Amended Complaint largely duplicate the allegations included in his original Complaint. Specifically, Plaintiff alleges that Fujitec hired him as its General Counsel on November 22, 2012, and promoted him to Chief Legal Officer in 2013. [Doc. 19, ¶ 15.]

Plaintiff, an African American male, alleges that in 2019, Fujitec America's Chief Executive Officer Gary Krupp[1] received a 10% increase in his salary from $300,000 to $330,000, and Fujitec America's Executive Vice President Joseph Smith received a 20% increase in his salary from $250,000 to $300,000. (*Id.*, ¶¶ 25-26.) Plaintiff alleges that he received a minimal raise, which left his salary 30% below Mr. Krupp and Mr. Smith's salaries. (*Id.*, ¶ 27.)

Plaintiff alleges that, near the end of 2019, he approached Krupp to request an increase in his compensation; however, Plaintiff alleges that Krupp rejected his request, and did not provide him with an annual bonus or pay increase. (*Id.*, ¶¶ 39, 41-42.)

Plaintiff claims that, on January 14, 2020, Krupp met with Plaintiff and informed him that Shawnez McKenzie, an employee in Fujitec's Finance Department had filed a complaint against him. (*Id.*, ¶ 46.) Plaintiff alleges that immediately following the meeting with Krupp, a Fujitec representative interviewed Plaintiff about Ms. McKenzie's complaint, which included, among other things, that Plaintiff grabbed Ms. McKenzie inappropriately by the waist in the breakroom

---

[1] Contrary to Plaintiff's allegations, Krupp holds the position of President of Fujitec America, not Chief Executive Officer.

at work, and visited her at her house. (*Id*., ¶¶ 48-50.) Plaintiff alleges that he denied Ms. McKenzie's allegations. (*Id*., ¶ 51.)

Plaintiff alleges that, on January 15, 2020, Krupp placed Plaintiff on paid administrative leave, and shortly thereafter Fujitec denied him access to its telecommunications systems, including his email. (*Id*., ¶¶ 56-57.) Plaintiff also alleges that he reached out to Krupp to request a status update as to the investigation; however, Krupp did not respond. (*Id*., ¶¶ 58-60, 62-63.) Plaintiff alleges that, on February 5, 2020, Krupp terminated him for violation of the company's sexual harassment policy. (*Id*., ¶ 66.)

Plaintiff states that, on February 18, 2020, consistent with Fujitec's policies, he submitted an appeal of his termination. (*Id*., ¶ 85.) Plaintiff alleges that Krupp and Fujitec America's representative reviewed and denied his appeal. (*Id*., ¶ 87.) Plaintiff claims to have suffered significant emotional and mental distress, as well as money damages, from the Fujitec Defendants' actions. (*Id*., ¶ 92.)

## IV. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests whether a cognizable claim has been adequately stated in the complaint. *Broyde v. Botham Tower, Inc.*, 13 F.3d 994, 996 (6th Cir. 1994), *cert. denied*, 114 S.Ct. 2137 (1994). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2008), the U.S. Supreme Court decided to "retire[]" the traditional *Conley v. Gibson*, 355 U.S. 41, 41 (1957) "no set of facts" standard for evaluating the sufficiency of a complaint under Fed. R. Civ. P. (12)(b)(6).[2]

---

[2] Under *Conley*, a court could dismiss a complaint only if it "appear[ed] beyond a doubt that the plaintiff c[ould] prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 335 U.S. 41, 45-46 (1957). The *Twombly* Court retired the *Conley* standard because it created an open invitation for plaintiffs to file frivolous lawsuits by permitting them to survive a Rule 12(b)(6) motion simply by alleging "a wholly conclusory statement of a claim."

In lieu of *Conley*'s "no set of facts" standard, the U.S. Supreme Court established a two-prong test for determining whether a complaint sufficiently states a cognizable claim for purposes of a Rule 12(b)(6) motion. First, the trial court must carefully examine the complaint to smoke out any "merely legal conclusions resting on the prior [factual] allegations." *Twombly,* 550 U.S. at 564. Once that step is complete, the trial court must weigh the remaining factual allegations to determine if they are sufficient to "nudge [the] claims across the line from conceivable to plausible." *Id.* at 570. Only if the complaint crosses this threshold may a claim proceed. *Id.*

In *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), the U.S. Supreme Court elaborated upon this plausibility standard for pleading. Specifically, the Court reiterated that there are "two working principles that underlie [the] decision in *Twombly*." *Iqbal,* 129 S.Ct. at 1949. The first is "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (emphasis added). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* In further explaining the "plausibility standard" the *Ashcroft* court stated:

> Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not "show[n]"--"that the pleader is entitled to relief."

*Id.* at 1950 (citing Fed. Rule Civ. Pro. 8(a)(2)). *See also, New Albany Tractor v. Louisville Tractor, et al.*, 650 F.3d 1046, 1051 (6th Cir. June 21, 2011) (applying the *Twombly/Iqbal* standard in ruling on a Rule 12(b)(6) motion to dismiss).

---

*Twombly*, *supra*, 550 U.S. at 561 (brackets omitted) (quoting *Conley*, 335 U.S. at 45). That is, a plaintiff could withstand a motion to dismiss under this minimal standard without "any showing of a reasonably founded hope" of making a case. *Id.* at 562 (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)).

Several claims in Plaintiff's First Amended Complaint suffer from the same pleading deficiencies as the original Complaint, and should be dismissed with prejudice. *Klan v. Med. Radiologists, Inc.*, 2014-Ohio-2344, 2014 WL 2526116, *4 (June 2, 2014) ("the repeated and continued failure to cure pleading deficiencies can certainly justify a dismissal with prejudice").

## V. ARGUMENT AND CITATION TO AUTHORITY

### A. Plaintiff's Wrongful Termination Claim Under Count I Against the Fujitec Defendants Fails Because Plaintiff Does Not State a Cognizable Public Policy Claim.

Plaintiff, an at-will employee, brings an Ohio tort claim of wrongful termination in violation of public policy, one of the recognized exceptions to the employment at-will doctrine. Under Ohio law, a claim for wrongful termination in violation of public policy requires a plaintiff to prove the following four elements:

> (1) a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law; (2) in general, dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy; (3) the plaintiff's dismissal was motivated by conduct related to the public policy; and (4) the employer did not have a justifiable legitimate business justification for the dismissal.

*Day v. Nat'l Elec. Contractors Ass'n*, 82 F. Supp. 3d 704, 707–08 (S.D. Ohio 2014).

With regard to the second element (the "jeopardy" element), a plaintiff must also show that there is no other remedy available. As the Ohio Supreme Court has noted, "there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests." *Day v. Nat'l Elec. Contractors Ass'n*, 82 F. Supp. 3d 704, 708 (S.D. Ohio 2014). Thus, where the statute underlying the public policy wrongful discharge claim provides a plaintiff with sufficient remedies to vindicate his rights, the jeopardy element cannot be satisfied. *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 244-248 (2002).

As this Court noted in its February 8, 2021 Order, Plaintiff's wrongful termination claim failed because he did not establish the jeopardy requirement.  Specifically, this Court noted that the public policies that Plaintiff attempted to rely upon to support this claim all appeared to relate to race discrimination or retaliation.  As a result, his claims were dismissed without prejudice, with the opportunity to re-allege additional facts to support a wrongful termination claim, if such facts exist. Rather than plead any facts to support such a claim, Plaintiff instead chose to plead legal conclusions for which he has provided no facts.  Specifically, in an attempt to plead around the jeopardy requirement, in addition to the previous allegations, Count I now states that the public policies Plaintiff relies upon include:

- "Reporting illegal workplace conditions or transactions or otherwise exposing information or activity related thereto;"

- "Reporting unlawful conduct committed by another employee and/or employer or otherwise exposing information or activity related thereto;"

- "Reporting violations of company policy committed by another employee and/or employer or otherwise exposing information or activity related thereto;"

- "Reporting workplace corruption or otherwise exposing information or activity related thereto;" and

- "Reporting financial misconduct in the workplace, including but not limited to fraud, or otherwise exposing information or activity related thereto."

[Doc. 19, ¶ 94.]

Thus, it appears Plaintiff is attempting to argue that he was some type of whistleblower and that this should support his claim for wrongful discharge.  The fatal flaw in this attempt to plead around the initial dismissal of this claim is that it is unsupported by any facts.  Simply stated,

Plaintiff has alleged, without any factual support whatsoever, that he reported unlawful activities. The reality, however, is that he is simply continuing his previous attempts to assert a public policy claim pursuant to Ohio law for wrongful discharge based upon racial discrimination and retaliation. [Doc. 19, ¶ 94.]

As this Court previously recognized, no public policy race discrimination or retaliation claims exist in Ohio because O.R.C § 4112, with its "full panoply of remedies, including compensatory and punitive damages," adequately protects society's interests. *Wakefield v. Children's Hospital,* 2008 WL 3833798, at *8 (S.D.Ohio, Aug. 13, 2008); *see also Carrasco v. NOAMTC, Inc.,* 124 Fed.Appx. 297, 304 (6th Cir.2004) (affirming the dismissal of the plaintiff's retaliation claim in violation of public policy because both Title VII and Ch. 4112 provide adequate remedies to protect society's interests). Furthermore, any such whistleblowing allegations (even if factually supported) nonetheless fail to satisfy the jeopardy element because Plaintiff has not and cannot show that the Fujitec Defendants were on notice that he was invoking a governmental policy as the basis of his complaint. See *Avery v. Joint Twp. Dist. Mem'l Hosp.,* 504 F. Supp. 2d 248, 257 (N.D. Ohio 2007), *aff'd,* 286 F. App'x 256 (6th Cir. 2008).

As before, Plaintiff's wrongful termination claim also fails because Plaintiff does not identify that a clear public policy existed and was manifested in a statute, rule, or common law (the "clarity" element"). *See Jakischa v. Cent. Parcel Express*, 106 F. App'x at 436, 440 (6th Cir. 2004) ([T]he Ohio Supreme Court has held that the 'clear public policy' sufficient to justify a wrongful-discharge claim 'may also be discerned as a matter of law based on other sources, such as the Constitutions of Ohio and the United States, administrative rules and regulations, and common law.'"). Workplace policies are not included in that list. Thus, to the extent Plaintiff

alleges that the Fujitec Defendants terminated him for asserting employee rights under company policy, that claims fails to satisfy the clarity element.

Accordingly, Plaintiff's claim for wrongful termination against the Fujitec Defendants set forth in Count I of his First Amended Complaint must be dismissed with prejudice.[3]

**B.     Plaintiff Fails to State a Claim for Invasion of Privacy by Publication of Private Facts Under Count III Against Krupp.**

To recover for invasion of privacy for publication of private facts, the following elements must ultimately be shown:

> (1) that there has been a public disclosure; (2) that the disclosure was of facts concerning the private life of an individual; (3) that the matter disclosed would be highly offensive and objectionable to a reasonable person of ordinary sensibilities; (4) that the disclosure was intentional; and (5) that the matter publicized is not of legitimate concern to the public.

*Miller v. Ameritech*, No. 00AP-909, 2001 WL 604200, at *3 (Ohio Ct. App. June 5, 2001).

In this Court's February 8, 2021 Order, this Court dismissed Plaintiff's claim for publication of private facts, finding both that Plaintiff could not satisfy the publication requirement (sharing allegations of harassment brought against Plaintiff at a social gathering with several employees was insufficient to establish "communicating the matter to the public at large"), and further noting that "the crux of an invasion of privacy claim is that the defendant has shared true, but private, facts about the plaintiff…here, Mitchell alleges that Krupp shared untrue facts." [Doc. 18, p. 30.]

---

[3] To the extent this claim is plead against Fujitec Co., Fujitec Co. respectfully requests that this Court dismiss the claim against it because Plaintiff has failed to plausibly allege sufficient facts to justify piercing the corporate veil to hold Fujitec Co. responsible for any purported acts of subsidiary Fujitec America. *See United States v. Bestfoods,* 524 U.S. 51, 61, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998).

Plaintiff's Amended Complaint does nothing to remedy these issues. Plaintiff merely adds his belief that non-employees may have been at a social gathering where Krupp discussed McKenzie's allegations against him, and that, as a result, many people must have found out about it. [Doc. 19, ¶ 112-113.]

Most notably, Plaintiff has never addressed the fact that he contends the facts allegedly shared about him were untrue. For this reason alone, Plaintiff's claim should fail. *See Miller*, 2001 WL 604200, at *4. (affirming dismissal of invasion of privacy claim for publication of private facts as "the entire tenor of appellant's complaint is that alleged statements concerning appellant are false").

Even if this invasion of privacy claim could be based upon allegations that Plaintiff contends are false, Plaintiff's new allegations fall well short of showing that Krupp "publicized" information regarding McKenzie's allegations against Plaintiff. Plaintiff has failed entirely to show any facts that would support "communicating the matter to the public at large." *Early v. The Toledo Blade*, 720 N.E.2d107, 135-136 (Ohio Ct. App. 1998). For these reasons, Plaintiff's invasion of privacy publication of private facts claim fails as a matter of law.

**C.  Plaintiff Fails to State a Claim for False Light Invasion of Privacy Under Count IV Against Krupp.**

The Supreme Court of Ohio adopted the Restatement (Second) of Torts definition for false light invasion of privacy, finding that a defendant is liable if:

> (1) the false light in which the other was placed would be highly offensive to the reasonable person, and (2) the actor had knowledge or acted with reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Welling v. Weinfeld*, 866 N.E.2d 1051, 1059 (2007).

For the same reasons identified above, Plaintiff's allegations have not and cannot show that Krupp "publicized" information sufficient to support a false light invasion of privacy claim. Accordingly, Plaintiff's false light invasion of privacy claim against Krupp set forth in Count IV of Plaintiff's First Amended Complaint fails and should be dismissed with prejudice.

### D.  Plaintiff Fails to State a Claim for Breach of Implied Contract Under Count V Against Fujitec America

In its February 8, 2021 Order, this Court noted that Plaintiff appeared the plead the breach of implied contract claim solely against Fujitec America, and ruled that Plaintiff's breach of implied contract claim failed because Plaintiff did not identify any clear promissory language that was accepted by Plaintiff. (Doc 18, p. 33.) Specifically, Plaintiff failed to identify specific substantive provisions in handbooks, policies or oral representations that created contracts, and he further failed to identify "clear promissory language" that could be relied upon as a contract. *Id.*

In response to this Court's Order, Plaintiff now claims he is relying upon the Company's sexual harassment policy, and complains that he was not adequately kept informed about the investigation, and that it was not adequately investigated. [Doc. 19, ¶ 132-137.] Plaintiff also claims that the Company breached its non-discrimination policy, and breached some apparent oral promise to give him a raise and a bonus. [Doc. 19, ¶ 139-144.] These allegations still fail to state a claim for breach of an implied contract under Ohio law.

In order to allege a suit for breach of an implied contract, a plaintiff must allege all the essential elements of a breach of contract claim. *Keller Electric, Inc. v. Gilbert*, 1996 Ohio App. Case No. 17467 91 2 0422, 1996 WL 183027, *5 (Apr. 17, 1996). Accordingly, "a plaintiff must show 'the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff.'" *Johnson v. Delphi Corp.*, 261 F. Supp. 2d 955, 961 (S.D. Ohio, W. Div. 2003) (quoting *Doner v. Snapp*, 98 Ohio App.3d 597, 600 (1994) and *Nilavar v. Osborn*,

137 Ohio App.3d 469, 483-84 (Ohio Ct. App. 2000)). Where a plaintiff asserts an implied contract and fails to allege all the essential elements of a contract, courts routinely dismiss those claims for failure to state a claim upon which relief may be granted. *Keller Electric, Inc.,* 1996 WL 183027, *5 ("inasmuch as Count III did not establish the presence of the essential elements of a contract, Count III could not state a claim for relief under a theory of implied contract").

Plaintiff's allegations continue to fall short of these standards. An allegation that a harassment policy was not adequately followed, or that an EEO policy against harassment was not followed, fails entirely to establish the essential terms of a contract. Furthermore, Plaintiff's allegation that an oral statement was made on or behalf of Fujitec regarding future compensation similarly fails to support a claim for breach of implied contract. *See Weiper v. W.A. Hill & Assoc.*, 104 Ohio App. 3d 250, 261, 661 N.E.2d 796, 803 (1995) ("a promise of future benefits or opportunities without a specific promise of continued employment does not support a promissory estoppel exception to the well-established doctrine of employment at will"). Thus, Plaintiff's new allegations do not save his breach of implied contract claim from dismissal - to be deemed an enforceable contract, a handbook or policy must "contain[] clear promissory language that the employee accepts by continuing to work after receiving it." *Galgoczy v. Chagrin Falls Auto Parts, Inc.*, 2010-Ohio-4686, 2010 WL 3816328, at *1 (Ohio Ct. App. Sept. 30, 2010).[4]

---

[4] Plaintiff has not clarified whether this claim is brought against Fujitec America only or both Fujitec America and Fujitec Co. To the extent the claim is brought against Fujitec Co., the Fujitec Defendants also seek dismissal of this claim as plead against Fujitec Co. for failing to plausibly allege sufficient facts to justify piercing the corporate veil to hold Fujitec Co. responsible for any purported acts of subsidiary Fujitec America. *See Bestfoods,* 524 U.S. 51, 61 (1998).

E.  **Plaintiff's Promissory Estoppel, Discrimination and Retaliation Claims Under Counts VI, VII, VIII, IX, and X Against Fujitec Co. Must Be Dismissed.**

"Title VII applies only to 'employers.'" 42 U.S.C. § 2000e-2.[5] Plaintiff identifies Fujitec America as his employer, and Fujitec Co. as the parent corporation of Fujitec America. [Doc. 19, ¶¶ 5, 15[6].] A parent corporation is generally not liable for the acts of its subsidiary, even if its subsidiary is wholly owned. *Bestfoods,* 524 U.S. 51, 61 (1998). Under Ohio law, a court will pierce the corporate veil to hold a parent company responsible under extraordinary cases if a plaintiff can show: (1) the parent's control over the subsidiary was "so complete" that the subsidiary had "no separate mind, will, or existence of its own"; (2) the parent's exercise of control over the subsidiary amounted to "fraud or an illegal act" against the plaintiff; and (3) "injury or unjust loss resulted to the plaintiff from such control and wrong." *Belvedere Condominium Unit Owners' Ass'n v. R.E. Roark Cos.,* 67 Ohio St.3d 274, 617 N.E.2d 1075, 1077 (1993). Plaintiff has not alleged that any such facts exist to justify piercing the corporate veil to hold Fujitec Co. responsible for purported acts of discrimination and/or retaliation. Similarly, Plaintiff has not alleged any facts to justify holding Fujitec Co. responsible for Plaintiff's claim of promissory estoppel. *See Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 726 (6th Cir. 2007). Accordingly, Plaintiff's federal and state discrimination, retaliation, and promissory estoppel claims against Fujitec Co. set forth in Counts VI, VII, VIII, IX, and X of Plaintiff's First Amended Complaint fail and should be dismissed with prejudice.

---

[5] Ohio's discrimination statute mirrors Title VII, and the Supreme Court of Ohio has held that federal case law interpreting Title VII . . . is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St.2d 192, 421 N.E.2d 128, 131 (Ohio 1981).

[6] Plaintiff defines "Fujitec" as Fujitec America, Inc. [Doc. 19, ¶ 4.]

### F. Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress Under Count XII Against the Fujitec Defendants.

To establish a claim for intentional infliction of emotional distress (IIED) under Ohio law, a plaintiff must prove:

> (1) the defendant intended to cause the plaintiff serious emotional distress or knew or should have known that its conduct would result in serious emotional distress to plaintiff; (2) the defendant's conduct was extreme and outrageous and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) the defendant's conduct was the proximate cause of the plaintiff's injury; and (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it.

*See Kovac v. Superior Dairy, Inc.*, 930 F.Supp.2d 857, 869-70 (N.D. Ohio 2013).

With regard to the "extreme and outrageous" prong, "[c]onduct giving rise to an IIED claim must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (citing *Long v. Ford Motor Co.*, 193 Fed. App'x 497, 503 (6th Cir.2006)). Indeed, "[t]o say that Ohio courts narrowly define 'extreme and outrageous' conduct would be something of an understatement." *Baab v. AMR Servs. Corp.*, 811 F. Supp. 1246, 1269 (N.D. Ohio 1993).

Notably, "Ohio places a particularly high bar on 'extreme and outrageous' conduct in the employer-employee relationship." *Culler v. Exal Corp.*, 193 F. Supp. 3d 850, 852-53 (N.D. Ohio 2016). This high bar precludes employees from bringing IIED claims related to their termination, even if based upon discrimination, without proof of something more. *Id.* In *Wolfe v. Thermo Fisher Scientific, Inc.*, the Court found the following allegations insufficient to support a claim of IIED:

> Defendants commented, made fun, ridiculed and made other inappropriate and sexually-charged remarks at a company-sponsored event. Defendants' behavior continued in the workplace.

> A false charge of sexual harassment was made against Plaintiff. Defendants failed to investigate Plaintiff's own complaints of sexual harassment and retaliation while at the same time pursuing a false claim against her. Finally, Defendants falsely imprisoned Plaintiff for four hours without food or water while they interrogated, intimidated, harassed and embarrassed her.

*Wolfe,* No. 2:08-cv-933, 2009 WL 1255023, *2 (S.D. Ohio May 4, 2009) (granting motion to dismiss, holding that the above facts failed to rise to the level of outrageous conduct necessary to support an IIED claim); *see also Ganim v. Brown Derby, Inc.*, 67 Ohio App.3d 60, 67 (1990) ("it would be inconsistent to allow a claim for intentional infliction of emotional distress to stand where an at-will employment agreement is at issue, and one party asserts its rights under the terms of such agreement.").

As this Court noted in its February 8, 2021 Order, "at least one Ohio court has held as a matter of law that 'falsely accusing [the plaintiff] of engaging in sexual harassment and violating' the company's policies, is not extreme or outrageous conduct." [Doc. 18, p. 41] *citing Adkins v. DuPont Vespel Parts & Shapes, Inc.*, 2007 WL 1643208, at *2 (Ohio Ct. App. June 7, 2007). In the face of this Court's ruling, Plaintiff doubled down on his allegations, alleging once again that McKenzie allegedly falsely accused him of harassment and that Krupp allegedly shared that accusation with others. [Doc. 19, ¶ 173-179.] These allegations again fall short of the standard sufficient to establish an IIED claim.

In an effort to avoid dismissal, Plaintiff's Amended Complaint cites to *Mango v. City of Columbus* to support his IIED claim; however, the Court in *Mango* denied defendant's motion for judgment on the pleadings as to the IIED claim because plaintiff alleged that defendant falsely accused her of abusing her children in order to take away her custody rights. That situation in not analogous to Plaintiff's allegations in this case in any way, shape or form. Therefore, Plaintiff's

claim for IIED against the Fujitec Defendants set forth in Count XI of Plaintiff's First Amended Complaint fails and should be dismissed with prejudice.[7]

### VI.  CONCLUSION

For all the foregoing reasons, the Court should grant the Fujitec Defendants' motion and dismiss Plaintiff's claims to the extent presented in this motion.

Respectfully submitted, this 22nd day of March, 2021.

> Respectfully submitted,
>
> *s/Martin B. Heller*
> Martin B. Heller (GA Bar No. 360538)*
> JonVieve D. Hill (GA Bar No. 907946)*
> *Admitted *Pro Hac Vice*
> FISHER & PHILLIPS LLP
> 1075 Peachtree Street, NE, Suite 3500
> Atlanta, Georgia 30309
> Telephone: (404) 231-1400
> Facsimile:  (404) 240-4249
> mheller@fisherphillips.com
> jhill@fisherphillips.com
>
> Jazmyn J. Stover (0088580)
> FISHER & PHILLIPS LLP
> 200 Public Square, Suite 4000
> Cleveland, Ohio 44114
> Telephone: (440) 838-8800
> Facsimile:  (440) 838-8805
> jstover@fisherphillips.com
>
> *Counsel for Defendants Fujitec America,
> Inc., Fujitec Co., Ltd., and Gary Krupp*

---

[7] The Fujitec Defendants also seek dismissal of this claim against Fujitec Co., as Plaintiff has failed to plausibly allege sufficient facts to justify piercing the corporate veil to hold Fujitec Co. responsible for any purported acts of subsidiary Fujitec America. *See Bestfoods,* 524 U.S. 51, 61 (1998).

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing **DEFENDANTS FUJITEC AMERICA, INC., FUJITEC CO., LTD., AND GARY KRUPP'S MEMORANDUM OF LAW IN SUPPORT TO PARTIALLY DISMISS PLAINTIFF'S CLAIMS** upon all parties to this matter by e-filing the same via the Court's CM/ECF system, which will automatically serve a copy on all counsel of record.

This 22nd day of March 2021.

*s/Martin B. Heller*
Martin B. Heller (GA Bar No. 360538)*
*Admitted *Pro Hac Vice*
FISHER & PHILLIPS LLP
1075 Peachtree Street, NE, Suite 3500
Atlanta, Georgia 30309
Telephone: (404) 231-1400
Facsimile: (404) 240-4249
mheller@fisherphillips.com